## McDONALD *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 36.   Argued October 20, 1944.—Decided November 20, 1944.

*Mr. Frederick E. S. Morrison,* with whom *Mr. John W. Bodine* was on the brief, for petitioner.

*Mr. Ralph F. Fuchs,* with whom *Solicitor General Fahy, Mr. Sewall Key* and *Miss Helen R. Carloss* were on the brief, for respondent.

MR. JUSTICE FRANKFURTER announced the conclusion and judgment of the Court, and an opinion in which the CHIEF JUSTICE, MR. JUSTICE ROBERTS and MR. JUSTICE JACKSON concur.

This is a controversy concerning a deficiency in petitioner's income tax for 1939.

In December 1938, the Governor of Pennsylvania appointed petitioner to serve an unexpired term as Judge of the Court of Common Pleas of Luzerne County. Under Pennsylvania law such an interim judgeship is filled for a full term at the next election. McDonald accepted this temporary appointment with the understanding that he would contest both the primary and general elections. To obtain the support of his party organization he was obliged to pay to the party fund an "assessment" made by the party's executive committee against all of the party's candidates. The amounts of such "assessments" were fixed on the basis of the total prospective salaries to be received from the various offices. The salary of a common pleas judge was $12,000 a year for a term of ten years, and the "assessment" against petitioner was fixed at $8,000. The proceeds from these "assessments" went to the general campaign fund in the service of the party's entire ticket. In addition to this political levy, McDonald also spent $5,017.27 for customary campaign expenses—adver-

tising, printing, travelling, etc. The sum of these outlays, $13,017.27, McDonald deducted as a "reelection expense." The Commissioner of Internal Revenue disallowed the item and notified him of a deficiency of $2,506.77.

In appropriate proceedings before the Tax Court of the United States that Court sustained the Commissioner, 1 T. C. 738, and its decision was affirmed by the Circuit Court of Appeals for the Third Circuit. 139 F. 2d 400. We brought the case here, 321 U. S. 762, to give a definitive judicial answer to an important problem in the administration of the federal income tax.

What class of outlays may, in relation to the federal income tax, be deducted from gross income and in what amount are matters solely for Congress. Our only problem is to ascertain what provisions Congress has made regarding such expenditures as those for which the petitioner claims the right of deduction. The case is not embarrassed by any entanglement with corrupt practices legislation either state or federal.

The materials from which must be distilled the will of Congress are the following provisions of the Internal Revenue Code: § 23 (a) (1) (A), 56 Stat. 798, 819, 26 U. S. C. § 23 (a) (1) (A) (Supp. 1943), in connection with § 24 (a) (1), 26 U. S. C. § 24 (a) (1), and § 48 (d), 26 U. S. C. § 48 (d); § 23 (e) (2), 26 U. S. C. § 23 (e) (2); § 23 (a) (2) as amended by § 121 of the Revenue Act of 1942, 56 Stat. 798, 819.

"All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" are allowed by § 23 (a) (1) (A) as deductions in computing net income. According to tax law terminology (§ 48 (d) of the Internal Revenue Code) the performance by petitioner of his judicial office constituted carrying on a "trade or business" within the terms of § 23 of the Internal Revenue Code. He was therefore entitled to deduct from his gross income all the "ordinary and

necessary expenses" paid during 1939 in carrying on that "trade or business." He could, that is, deduct all expenses that related to the discharge of his functions as a judge. But his campaign contributions were not expenses incurred in being a judge but in trying to be a judge for the next ten years. That is as true of the money he spent more immediately for his own reelection as it is of the "assessment" he paid into the party coffers for the success of his party's ticket. The incongruity of allowing such contributions as expenses incidental to the means of earning income as a judge is underlined by the insistence that payment of the "assessment" levied by the party as a prerequisite to being allowed to be a candidate is deductible as a "business" expense. If such "assessments" for future acquisition of a profitable office are part of the expenses in performing the functions of that office for the taxable year, then why should not the same deduction be allowed for "assessment" against officeholders not candidates for immediate reappointment or reelection but who pay such "assessments" out of party allegiance mixed or unmixed by a lively sense of future favors?

In order to disallow them we are not called upon to find that petitioner's outlays come within the prohibition of § 24 of the Internal Revenue Code in that they constituted "Personal . . . expenses." "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Ice Co.* v. *Helvering,* 292 U. S. 435, 440. For these campaign expenses to be deductible, it must be found that they can conveniently come within § 23 (a) (1) (A). To put it mildly, that section is not a clear provision for such an allowance. To determine allowable deductions by the different internal party arrangements for bearing the cost of political campaigns in the forty-eight states would disregard the explicit restrictions of § 23 confining deduct-

ible expenses solely to outlays in the efforts or services—here the business of judging—from which the income flows. Compare *Welch* v. *Helvering,* 290 U. S. 111, 115–116.

Petitioner next insists that inasmuch as he was defeated for reelection his campaign expenses constitute a loss incurred in a "transaction entered into for profit" and as such a deductible allowance by virtue of § 23 (e) (2).[1] Such an argument does not deserve more than short shrift. It suffices to say that petitioner's money was not spent to buy the election but to buy the opportunity to persuade the electors. His campaign contribution was not an insurance of victory frustrated by "an act of God" but the price paid for an active share in the hazards of popular elections. To argue that the loss of the election proves that the expense incurred in such election is a deductible "loss" under § 23 (e) (2) is to play with words.

Finally, reliance is placed on an amendment to the Internal Revenue Code introduced by § 121 of the Revenue Act of 1942, 56 Stat. 798, 819.[2] This amendment was proposed by the Treasury (1 Hearings before Committee on Ways and Means, Revenue Revision, 1942, 77th Cong., 2d Sess., p. 88) to afford relief for a specifically defined inequitable situation which had become manifest by the decision of the Court in *Higgins* v. *Commissioner,* 312 U. S. 212. In that case this Court held that by previous enactments Congress had made no provision for al-

---

[1] *"Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise . . . if incurred in any transaction entered into for profit, though not connected with the trade or business."

[2] *"Non-trade or non-business expenses.*—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

lowable deductions from profitable transactions not covered by the statutory concept of "business" income. But of course earnings from "the performance of the functions of a public office" had specifically been so covered. § 48 (d).[3] Congress adopted the Treasury proposal for the restricted purpose which originated it. And so here the difficulty is not that petitioner's expenditures related to "non-business" income, and thus were excluded from the legislative scheme before the 1942 Amendment, but that they were not incurred in "carrying on" his "business" of judging. The amendment of 1942 merely enlarged the category of incomes with reference to which expenses were deductible. It did not enlarge the range of allowable deductions[4] of "business" expenses. In short, the act of 1942 in no wise affected the disallowance of campaign expenses as consistently reflected by legislative history, court decision, Treasury practice and Treasury regulations.[5] Nothing whatever in the circumstances attending the adoption of § 121 of the Revenue Act of 1942 warrants the suggestion that Congress unwittingly initiated a radi-

---

[3] *"Trade or business.*—The term 'trade or business' includes the performance of the functions of a public office." This amendment, added by the Revenue Act of 1934, 48 Stat. 680, 696, was merely "declaratory of existing law." S. Rep. No. 558, 73d Cong., 2d Sess., p. 29. It had "nothing to do" with campaign expenses, 1 Hearings before Committee on Finance on H. R. 8735, 73d Cong., 2d Sess. (March 6, 1934), p. 29, which continued to be outside deductions allowed by § 23 (a) (1).

[4] "A deduction under this section is subject, except for the requirement of being incurred in connection with a trade or business, to all the restrictions and limitations that apply in the case of the deduction under section 23 (a) (1) (A) of an expense paid or incurred in carrying on any trade or business." H. Rep. No. 2333, 77th Cong., 2d Sess., p. 75; S. Rep. No. 1631, 77th Cong., 2d Sess., p. 88.

[5] *Reed* v. *Commissioner,* 13 B. T. A. 513, reversed on another ground, 34 F. 2d 263, reversed *sub nom. Lucas* v. *Reed,* 281 U. S. 699; Treas. Reg. 103, § 19.23 (a)–15; Treas. Reg. 103, § 23 (o)–1; O. D. 864, 4 Cum. Bull. 211 (1921).

cal change of policy regarding campaign expenditures. Every relevant item of evidence bearing upon the history of this amendment precludes the inference that the Treasury without intent and the Congress without appreciation opened wide the door for the allowance of campaign expenditures as deductible expenses. It surely is not fair to attribute to Congress the reversal of its policy and the enactment of a far-reaching new policy in the absence of any evidence, however tenuous or speculative, that Congress was legislating on the subject.

It is not for this Court to initiate policies as to the deduction of campaign expenses. It is for Congress to determine the relation of campaign expenditures to tax deductions by candidates for public office, under such circumstances and within such limits as commend themselves to its judgment. But we certainly cannot draw intimations of such a policy from legislation by Congress increasingly restrictive against campaign contributions and political activities by government officials. The relation between money and politics generally—and more particularly the cost of campaigns and contributions by prospective officeholders, especially judges—involves issues of far-reaching importance to a democracy and is beset with legislative difficulties that even judges can appreciate. But these difficulties can neither be met nor avoided by spurious interpretation of tax provisions dealing with allowable deductions.

To find sanction in existing tax legislation for deduction of petitioner's campaign expenditures would necessarily require allowance of deduction for campaign expenditures by all candidates, whether incumbents seeking reelection or new contenders. To draw a distinction between outlays for reelection and those for election—to allow the former and disallow the latter—is unsupportable in reason. It is even more unsupportable in public policy to derive from what Congress has thus far enacted a handicap against

candidates challenging existing officeholders. And so we cannot recognize petitioner's claim on the score that he was a candidate for reelection.[6]

Even if these conclusions, in the setting of federal income tax legislation, derived less easily than they do from the statutory provisions under scrutiny, we should not be inclined to displace the views of the Tax Court with our own.[7] Of course the Tax Court cannot define the limits of its own authority. And in cases like *Commissioner* v. *Heininger*, 320 U. S. 467, where the Tax Court mistakenly felt itself bound by superior judicial authority, we must give corrective relief. But, as a system, tax legislation is not to be treated as though it were loose talk or presented isolated abstract questions of law casting upon the federal courts the task of independent construction. Tax language normally has an enclosed meaning or has legitimately acquired such by the authority of those specially skilled in its application. To speak of tax determinations made in the system of review specially designed for federal tax cases as technical is not to imply opprobrium.

Having regard to the controversies which peculiarly call for this Court's adjudication and to the demands for their adequate disposition, as well as to the exigencies of litigation generally, relatively few appeals from Tax Court decisions can in any event come here. That court of necessity must be the main agency for nation-wide supervision of tax administration. Whatever the statutory or practical limitations upon the exercise of its authority, Congress has plainly designed that tribunal to serve, as it were, as the exchequer court of the country. Due regard

---

[6] In the interest of accuracy it is to be pointed out that petitioner was not a candidate for reelection; he was a candidate for election for the first time.

[7] That the Tax Court may, as is sometimes true even of other courts, indulge in needless and erroneous observations is beside the point. See *Helvering* v. *Gowran*, 302 U. S. 238, 245–246.

for these considerations is the underlying rationale of *Dobson* v. *Commissioner,* 320 U. S. 489. We are therefore relieved from discussing the numerous cases in which the Tax Court or its predecessor, the Board of Tax Appeals, allowed or disallowed deductions and their bearing on the situation before us. To do so involves detailed analysis of the special circumstances of various "businesses" and expenses incident to their "carrying on." We shall not enter this quagmire of particularities.

*Affirmed.*

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE BLACK, dissenting.

Petitioner, a lawyer of many years' experience, gave up his practice and accepted appointment as a judge upon condition that he run to succeed himself. In campaigning for reelection he incurred certain campaign expenses. These expenses, according to the Circuit Court of Appeals were "legitimate in their entirety," and "the objective of the expenditures was to obtain a considerable amount of money, over at least a decade of years." This Court has not reached a contrary conclusion. For our purpose, therefore, we may consider that the expenses were incurred, at least in part, "for the production . . . of income." The literal language of § 121 of the Revenue Act of 1942, 56 Stat. 798, 819, is broad enough to allow a deduction for expenses so induced. That statute, which Congress made applicable retroactively, allows the following deduction, in computing net income:

"In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

Prior to the enactment of this section, taxpayers in computing net income were not allowed deductions from gross

income for expenses incurred unless they were "ordinary and necessary expenses paid or incurred . . . in carrying on a trade or business." Congress, by this new section, introduced a new type of deduction, for as the House and Senate Committees said, it allowed ". . . a deduction for the ordinary and necessary expenses of an individual paid or incurred . . . for the production and collection of income . . ." Before the 1942 Act, an expense to be deductible had to be "ordinary and necessary" in its relationship to the taxpayer's business; under the new section it need only be "ordinary and necessary" in its relationship to the taxpayer's efforts to produce income. Hence, while the words "ordinary and necessary expenses," defining permissible deductions, remained unchanged in the new section, they were given added content in their new relationship. Obviously, Treasury regulations and decisions limiting the scope of "ordinary and necessary" as applied to business expenses under the old law may be wholly unsuited to define the meaning of those words in their new context, and such rulings and decisions can throw little if any light on the meaning of § 121. Since the enactment of the new section, the two questions essential to determination of deductibility are: Were the expenses incurred in an effort to produce income? Were these expenses, or part of them, "ordinary and necessary" in connection with that effort? These are in most instances pure questions of fact and in cases such as this are to be determined by the Tax Court. See *Commissioner* v. *Heininger*, 320 U. S. 467, 475. The Tax Court did not make findings of fact on these crucial issues, but categorically denied that campaign expenses could be deducted at all. This, I think, was an erroneous interpretation of § 121.

The 1942 Act articulated the purpose of Congress to wipe out every vestige of a policy which denied tax deductions for legitimate expenses incurred in producing taxable income. Taxation on net, not on gross, income has

always been the broad basic policy of our income tax laws. Net income may be defined as what remains out of gross income after subtracting the ordinary and necessary expenses incurred in efforts to obtain or to keep it. In 1941, this Court upheld in *Higgins* v. *Commissioner,* 312 U. S. 212, a finding of the Board of Tax Appeals that one who managed, conserved and maintained his own property was not engaged in a "trade or business" and for this reason was not entitled to deduct expenses incurred in producing his gross income. The effect of this holding was to impair the general Congressional policy to tax only net income. Congress in its Revenue Act of 1942, *supra,* took note of this impairment and indicated in a most forthright manner its allegiance to the net income tax policy. Except for transactions carried on "primarily as a sport, hobby, or recreation," see Senate and House Committee Reports, *supra,* Congress provided a deduction for all ordinary and necessary expenses incurred in the production of income. The language it utilized was certainly far broader than was required to meet the narrow problem presented by the *Higgins* case. Congress specifically disposed of the *Higgins* problem by allowing a deduction for the expenses incurred in ". . . the management, conservation or maintenance of property held for the production of income." Had Congress simply enacted these words, and nothing more, it might properly have been inferred that it intended to grant the type of deduction denied in the *Higgins* case, and no other. But it provided an additional deduction, in the very same section, for expenses incurred "in the production . . . of income." To hold, therefore, that Congress in this new section was concerning itself only with the restricted issue created by the *Higgins* case, is to deny any meaning or validity to this latter clause; in a larger sense, such a construction carves out of the section a vital segment which Congress intentionally— or so we must assume—put there.

68

The Court interprets § 121 as not permitting the deductions, without denying that the expenditures were made by petitioner for "the production of income." This interpretation rests in part on the conclusion that the Section in no wise applies to expenses incurred in "business," and that the deductions claimed by the petitioner were in relation to a "business" explicitly so denominated by § 48 (d) of the Internal Revenue Code.[1] The Court's construction would appear to be quite different from that of the House and Senate committees which reported their construction of the measure to their respective bodies. The reports expressly stated that "The Amendment . . . allows a deduction for the ordinary and necessary expenses of an individual incurred during the taxable year for the production and collection of income . . . whether or not such expenses are incurred in carrying on a trade or business." We cannot question the special competence of these two committees to interpret their own legislation. Congress therefore apparently intended to obliterate the legal niceties of the "trade or business" distinction, insofar as they affected deductions for expenses incurred in the "production and collection of income."

The Court's decision is also grounded upon its reference to congressional policy restricting compaign contributions and political activities by government officials. We are

---

[1] Cf. *United States* v. *Pyne*, 313 U. S. 127. If the petitioner is to be denied the benefit of the deduction under the 1942 amendment (§ 121 (a) (2)) on the ground that these expenses were incurred in a "business," then it is difficult to understand why he should be denied the deduction under § 23 (a) (1) (A) of the Internal Revenue Code, which provides deductions for expenses incurred in carrying on a business. On the one hand, the Court denies the deduction because the expenses were incurred in relation to a "business"; on the other hand, the Court denies the deduction as a "business expense" on the ground that his expenses "were not incurred in 'carrying on' his 'business' . . ." This is a distinction without a difference, two phrases with but a single thought.

not dealing here, however, with campaign contributions made by one person to further the candidacy of another. Besides, Congress has not attempted to regulate expenditures of candidates for state office. I can hardly conceive that we should infer that it wanted to penalize through its tax laws necessary campaign expenses, and thereby condemn a practice of campaigning that is as old as our country and which exists in every state of the Union. Unless our democratic philosophy is wrong, there can be no evil in a candidate spending a legally permissible and necessary sum to approach the electorate and enable them to pass an informed judgment upon his qualifications. This is not, of course, to be taken as denoting approval of corrupt campaign expenditures, or of any of the myriad abuses which beset our systems of election. But we ought not to eviscerate a revenue act, and deny this state official a deduction for expenses incurred in a state election campaign, because Congress has limited campaign contributions in federal elections, and passed restrictive legislation against political activities by federal employees.

The Tax Court too relied upon grounds of public policy. It thought it contrary to "the basic ideology underlying the principles of our government" to hold that a public office constitutes a "trade or business," although Congress for tax purposes had declared it was. The Tax Court also thought that "under the ban of public conscience and . . . public policy is the contention that expenditures made to promote one's candidacy for election to public office represent expenses 'paid . . . for the production or collection of income.' " Public officials in this country, many of whom must campaign for election, are almost universally paid for their services. That we do pay our public servants is not at all inconsistent with the fact that public service in a large measure represents an honest expression of the social conscience. Nor does individual dependence upon remuneration for such services detract

at all from the high and uncompromising standards of those who perform public duties. Without monetary rewards office-holding would necessarily be limited to one class only—the independently wealthy. Proposals to accomplish such a purpose were deliberately rejected at the very beginning of the Nation's history. I deny the existence of a public policy which, while permitting Congress to tax the income of elected public officials, bars Congress from allowing a deduction for necessary campaign expenses.

It is said that *Dobson* v. *Commissioner*, 320 U. S. 489, gives some support to the Court's decision, and that we should not "displace the views of the Tax Court with our own." Cf. *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. The Court's opinion does exactly that, for it rests in part upon its holding that McDonald as a judge was engaged in "business," while the Tax Court specifically found that he was not. Neither the *Dobson* case nor any other to which the Court's opinion points has indicated that we should automatically accept the Tax Court's construction of a statute, while repudiating the reasons on which its conclusion rested.

State officials all over this nation have been subject to federal income taxes since 1939. When they run for office, they must necessarily spend some money to advertise their campaigns. We permit private individuals to deduct expenses incurred in advertising to get business. If this petitioner had owned a factory, the operations of which were suspended because of war contracts, and had advertised goods which he could not presently sell, the expenses of such advertising would have been deductible under Treasury rulings.[2]

---

[2] I. T. 3581, 1–2 Cum. Bull. 88 (1942); I. T. 3564, 1–2 Cum. Bull. 87 (1942). The following types of expenses have been held to be deductible as business expenses: ". . . payments by brewers to

So long as campaign expenses spent by candidates are legitimate, ordinary, and necessary, I am unwilling to assume that Congress intended by the 1942 Act to discriminate against the thousands of state officials subject to federal income taxes. The language Congress used literally protects petitioner's right to a deduction; nothing in the legislative history indicates an intent to deny it. Certainly there are abuses in campaign expenditures. But that is a problem that should be attacked squarely by the proper state and federal authorities, and not by strained statutory construction which permits a discriminatory penalty to be imposed on taxpayers who work for the states, counties, municipalities, or the federal government. I think we should reverse and remand this cause to the Tax Court with instructions to pass upon the factual questions which it did not previously determine.

MR. JUSTICE REED, MR. JUSTICE DOUGLAS, and MR. JUSTICE MURPHY join in this dissent.

---

associations to combat prohibition; railroad contributions to an association conducting a campaign to create favorable public opinion; fees paid to organizations to avoid labor trouble and combat unionization, and also union dues; payments to a fund to fight the boll weevil by a taxpayer in the cotton business; membership fees or dues paid by individuals or corporations to a chamber of commerce or board of trade where the membership is employed as a means of advancing the business interests of the individual or corporation; . . . contributions to a chamber of commerce engaged in stimulating and expanding local business; assessments paid by member banks to a clearing house association as a means of furthering their business interests, as well as amounts to be distributed by the association to civic organizations for building up local trade; payments to organizations designed to expand trade; and membership dues paid associations organized to promote the business interests of the members by the collection and dissemination to its members of information and statistics." 4 Mertens, Law of Federal Income Taxation, 505–7, and cases therein cited. For further analogous business expense deductions, see 4 Mertens, ibid., chapter 25.