Harold J. and Opal A. Plumley v. Commissioner.
Plumley v. Commissioner
Docket No. 4923-68.
United States Tax Court
T.C. Memo 1970-35; 1970 Tax Ct. Memo LEXIS 325; 29 T.C.M. (CCH) 98; T.C.M. (RIA) 70035; February 9, 1970, Filed. Harold J. Plumley, pro se, R.R. #8, Box 213, Muncie, Ind.Bernard J. Boyle and Wayne I. Chertow, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency of $1,447.04 in petitioners' 1966 income tax. We must decide whether petitioner, Harold J. Plumley, is entitled to a deduction for the value of certain shares of Mid-American Companies, Inc., which he transferred to two employees of a wholly owned subsidiary of Mid-American Companies, Inc. Findings of Fact Petitioners, Harold J. Plumley, ("petitioner") and Opal A. Plumley, husband and wife, resided in Muncie, Indiana at the time they filed their petitioner herein. They filed their joint Federal income tax return for 1966 with the district director of internal revenue, Indianapolis, Indiana. In 1962 petitioner, a certified public accountant, was employed by Harrington, Hunt and Company, Certified Public *327 Accountants. During 1962 he devoted most of his time to public accounting work. In May 1963 he became a partner in the accounting firm of Harrington, Hunt, Plumley and Company. Thereafter he became instrumental in organizing and promoting several corporations, engaging in such activities on behalf of the firm, and devoting an increasing percentage of his time to servicing the management needs of these corporate clients. Among the corporations petitioner was instrumental in organizing and promoting was Talma Fastener Corporation ("Talma"), incorporated in June 1964, and Mid-American Companies, Inc. ("Mid-American"), incorporated in October 1964. Talma became a wholly owned subsidiary of Mid-American. Petitioner and his family were issued 37,483 shares of Mid-American's original issue of 105,481 shares. Early in 1964 petitioner and five other men had formulated plans for the formation of a fastener company. It was to be a new company, starting from scratch. By May 1964 it became apparent to these men that they had the ability to form such a company, although they had little capital. They foresaw that during the early months of the company's business the company "would be tight cash-wise. *328 " At the same time petitioner recognized the importance to the success or failure of the company of its employment of Colman Howton ("Howton"), a production man, and Harry Wink ("Wink"), a salesman. Petitioner induced these men to work for Talma for $100 a week, substantially less than they had been earning in their previous employments. He believed that when Talma had been established in business it would be able to and would raise their salaries to the level these men would have earned had they continued in their previous employments. Petitioner orally promised that he personally would make up the difference in any event. Talma did not prosper as quickly as petitioner had hoped. In 1966 it remained financially incapable of raising the salary of these men to the level they would have enjoyed had they continued in their previous employments. In 1966 petitioner sat down with Howton and Wink to make good on his promise. It was agreed that each should have earned $10,000 a year during the period he was employed by Talma. From this figure was deducted the compensation Howton and Wink had actually received from Talma and the balances - $3,365 for Wink and $3,625 for Howton - were arrived *329 at. As petitioner did not have sufficient cash to pay them, Howton and Wink agreed to accept payment in shares of Mid-American. Petitioner transferred to them shares having a fair market value of $6,900 equal to petitioner's basis in such shares. During 1966 petitioner did not dispose of any of his remaining shares of stock in Mid-American. Harrington, Hunt, Plumley and Company received fees from the corporations in the organization and promotion of which petitioner was instrumental. An original fee from Talma of approximately $2,700 reflected charges for petitioner's organization and promotion activities, approximately 85 percent of such fee, as well as charges for his regular accounting services. Subsequently the accounting firm collected fees from Talma on a regular basis. Talma was not a substantial client of Harrington, Hunt, Plumley and Company. By January 1966, petitioner "had several of these corporations going," i.e., corporations for which he devoted most of his 100 time in managing. These corporations were not paying the regular accounting fees that had previously been contributed by petitioner to the accounting firm. For this reason, and because petitioner's and *330 Hunt's objectives were different (Hunt's being to remain in the accounting profession), the partnership was dissolved in January 1966. Thereafter petitioner was employed directly by these corporations, managing them and collecting salaries directly from them rather than receiving his fees indirectly through a division of partnership profits. During 1966 petitioner earned approximately $15,000 in the form of such salaries. At the time petitioner originally made his promises to Howton and Wink it was principally because he expected their services would cause Talma to prosper, with a resulting appreciation in value of his stock in Mid-American. Secondarily, he expected Talma would pay the accounting firm, of which he was a partner, fees for his organizational and management services, as well as for his regular accounting services. On their joint Federal income tax return petitioners claimed, with respect to petitioner's transfer of stock to Howton and Wink, a deduction of $6,990. In his statutory notice of deficiency the Commissioner disallowed the claimed deduction with the explanation that it was "not allowable under sections 162, 212, 165 or any other section of the Internal Revenue *331 Code of 1954." Opinion We must decide whether petitioner is entitled to a deduction of $6,990, the fair market value of stock owned by petitioner in Mid-American Companies, Inc., which he transferred to two employees of Talma as compensation for services which they rendered Talma. The deduction is claimed either as an "ordinary and necessary" business expense under section 162, I.R.C. 1954, [1] or as a nonbusiness expense incurred for the production of income under section 212. In the alternative petitioner claims he is entitled to a deduction under section 165, for a loss incurred in a transaction entered into for profit, though not connected with a trade or business. Section 162(a) provides there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 212 provides that in the case of an individual there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year for, among other things, the production of income. Section *332 212 has neither the purpose nor effect of enlarging the area of allowable deductions; it is to be considered in pari materia with section 162, providing for a class of deductions coextensive with "business" deductions but for the requirement that the income-producing activity be a trade or business. United States v. Gilmore, 372 U.S. 39. It merely enlarged the category of incomes with respect to which expenses are deductible, McDonald v. Commissioner, 323 U.S. 57, 62, to include expenses incurred in the production of income. Whipple v. Commissioner, 373 U.S. 193, 200. We find that petitioner58s activity of fostering his assemblage of struggling businesses for compensation constituted either a trade or business, or, if not a trade or business, an activity engaged in for the production of income. Petitioner has persuaded us that his services resulted in his receipt of income "other than the normal investor's return, income received directly for his own services rather than indirectly through the corporate enterprise, and the principles of Burnet ( Burnet v. Clark, 287 U.S. 410), Dalton ( Dalton v. Bowers, 287 U.S. 404), *333 duPont ( Deputy v. duPont, 308 U.S. 488) and Higgins ( Iggins v. Commissioner 312 U.S. 212) are therefore not offended (by such a finding.)" Whipple v. Commissioner, 373 U.S. 193, 203. Even if the taxpayer demonstrates an independent trade or business of his own, as distinct from the trade or business of a corporation in which he is an investor, the expense must be shown to be both "ordinary" and "necessary" in order to qualify for deduction under either section 162 or section 212. Welch v. Helvering, 290 U.S. 111. In determining whether a particular expense is "ordinary" the Supreme Court has stated: One of the extremely relevant circumstances is the nature and scope of the particular business out of which the 101 expense in question accrued. The fact that an obligation to pay has arisen is not sufficient. It is the kind of transaction out of which the obligation arose and its normalcy in the particular business which are crucial and controlling. ( Deputy v. duPont, 308 U.S. 488, 496.) It has been held that for an expense to be normal in the particular business, it is not necessary that the payments be habitual *334 or normal in the sense that the same taxpayer will have to make them often. Welch v. Helvering, supra. Nevertheless, we are not persuaded that petitioner's obligation to Howton and Wink was "ordinary" in the particular trade or business in which petitioner was engaged - performing management and accounting services to Talma for compensation. Nor has petitioner persuaded us that his engagement was "necessary" or that it was directly connected with or proximately related to his alleged trade or business, a prerequisite to allowance of the deduction under either section 162 or section 212. See Niblock v. Commissioner, 417 F. 2d 1185 (C.A. 7, 1969), affirming a Memorandum Opinion of this Court, and Stratmore v. U.S., 420 F. 2d 461 (C.A. 3, 1970). Accordingly, we hold petitioner is not entitled to the claimed deduction under either of those sections. In the alternative, petitioner claims he is entitled under section 165(a) and (c)(2) to a deduction of $6,990 characterizing his transfer of the shares as a "loss sustained during the taxable year and not compensated for by insurance or otherwise," and "incurred in [a] transaction entered into for *335 profit, though not connected with a trade or business." In J. K. Downer, 48 T.C. 86 (1967), the taxpayer, a major shareholder of a corporation, transferred stock in the corporation, held for more than six months, having a fair market value of $15,000 and an adjusted basis of $100,000, to a third person in consideration for services which that person rendered to the corporation. This Court held the shareholder sustained a loss incurred in a transaction entered into for profit, capital in nature, as resulting from his sale or exchange of a capital asset. The measure of his loss was the difference between his adjusted basis in the stock and the value of the intangible benefit he received upon the exchange, presumably equal to the fair market value of the stock at the time of the exchange - $15,000. As section 165(f) limits allowance of such a loss to the extent allowed in sections 1211 and 1212, we held the taxpayer was entitled to a long-term capital loss of $85,000. We think the present case is controlled by J. K. Downer, supra, the petitioner realizing no loss, however, as the fair market value of his stock at the time of the exchange was equal to its adjusted *336 basis. Accordingly we hold that petitioner is not entitled to any loss deduction under section 165. As the issue is not before use, we do not decide whether petitioner made a contribution of capital to Mid-American which should be reflected in an increase in the basis of his remaining shares. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩