ROBERT B. WOISCHKE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woischke v. Commissioner
Docket No. 5878-76.
United States Tax Court
T.C. Memo 1978-217; 1978 Tax Ct. Memo LEXIS 303; 37 T.C.M. (CCH) 933; T.C.M. (RIA) 78217; June 8, 1978, Filed Robert B. Woischke, *305 pro se. Kenneth W. McWade, for respondent. DANSON MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Pursuant to section 7456(c), Internal Revenue Code of 1954, and Rules 180 and 182, Tax Court Rules of Practice and Procedure, this case was heard by Special Trial Judge Randolph F. Caldwell, Jr. His report was filed on March 1, 1978, and no exceptions thereto have been filed by the parties. The Court agrees with and adopts the report of the special trial judge as set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a) of the Internal Revenue Code of 1954, [1]/ for years and in amounts as follows: Years
Deficiencies
Additions to Tax
1972
$ 1,851.10
$ 92.56
1973
1,972.78
98.64
Petitioner filed an amended return for 1972 on which he claimed deductions *306 in the amount of $ 1,111.51 in addition to the deductions claimed on his original return for that year. Respondent disallowed deductions claimed by petitioner as follows: Item
1972 as amended
1973
Contributions
Civil Air Patrol
$ 323.21
$ 667.43
Other
250.00 [2]/
250.00
Educational expense
1,950.99 [3]/
639.37
Office-in-home
652.71 [2]/
650.78
Interest expense
5,000.00
5,000.00
Respondent has conceded that petitioner is entitled to deduct the charitable contributions made to the Civil Air Patrol and the claimed educational expenses for both years. The issues remaining for decision are as follows: (1) Whether petitioner is entitled to an interest expense deduction under section 163 of $ 5,000 for each of the taxable years involved. (2) Whether petitioner is entitled to an office-in-home expense deduction under section 162 or section 212 for each year. Respondent has conceded that the total dollar amounts of petitioner's rent and utilities *307 upon which the claimed deductions were based have been substantiated, but he contests the method of allocation of those expenses used by petitioner and the deductibility of any amount as a matter of law. (3) Whether petitioner is entitled under section 170 to a deduction for the disallowed "other" charitable contributions of $ 250 for each year. (4) Whether any part of any underpayment found to be due by petitioner for either year was due to negligence or intentional disregad of rules and regulations, so as to render petitioner liable for additions to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits identified therein and attached thereto, is incorporated herein by this reference. Petitioner, Robert B. Woischke, is a single individual. At the time of filing his petition, he resided in Anchorage, Alaska. He timely filed a return for 1972 and for 1973 with the Regional Service Center at Covington, Kentucky. On April 8, 1974, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1972, with the Covington Service Center. Since 1970, petitioner has been an *308 air traffic controller for the Federal Aviation Administration. During the years 1972 and 1973, petitioner worked at the Don Scott Airfield in Columbus, Ohio. In August 1974, petitioner requested to be and was transferred to Anchorage. Petitioner's gross income in 1972 was $ 14,624.67; in 1973 it was $ 16,041.07. From approximately 1966 and continuing through the taxable years involved, petitioner spent many of his off-duty hours engaged in research on term life insurance. Using the information he had gathered in his research, petitioner developed an insurance plan. He was convinced that any insurance company using his plan would make a substantial profit on policies issued under the plan. During 1972 and 1973, petitioner attempted to interest several major insurance companies in his plan. Petitioner was not successful in his efforts. Consequently, petitioner considered forming his own insurance company which would utilize his plan. Petitioner was never authorized to sell insurance by the State of Ohio and he never realized any income from his efforts in the insurance field. Petitioner accumulated large amounts of material during his research. He kept his material *309 in his efficiency apartment. The material was stored in six boxes. Petitioner claimed a home office expense of $ 652.71 on his amended 1972 Federal income tax return and claimed $ 650.78 as a home office expense on his 1973 return. Petitioner computed these figures by allocating one-third of his monthly rent, $ 150, and one-third of his utility and telephone expenses to home office use. On his 1973 return and on his 1972 amended return petitioner claimed a deduction for cash contributions of $ 250, which he testified was broken down as follows: Boy Scouts $ 25
Girl Scouts
25
Salvation Army
25
Goodwill Industries
25
United Fund
150
Petitioner maintained a checking account and a savings account at the Ohio National Bank of Columbus, Ohio, during the years in question. OPINION Before proceeding to the substantive issues, there is one matter requiring attention which, it was thought, had been settled at a conference with the parties in chambers just prior to the trial. Petitioner complained that the statutory notice which he received in Anchorage was undated and had been received after April 15, 1976. It appeared from information furnished by respondent's *310 counsel at the conference that the statutory notice had been sent to petitioner at two places -- one to his address in Anchorage, and the other to his former address in Columbus. The one sent to Anchorage did not have a date stamped on it. It then appearing in light of petitioner's statement as to the date he received the notice addressed to Anchorage, that said notice would have had to have been mailed prior to April 15, 1976, the Court suggested that paragraph 6 of the Stipulation of facts be changed so as to read "On or before April 15, 1976 [instead of "On April 1, 1976"], the District Director of Internal Revenue, Cincinnati, Ohio, issued a statutory notice of deficiency, etc." The suggested change was made in ink and initialed by petitioner and by counsel for respondent. In his opening brief, petitioner appears to be still complaining about the notice of deficiency. If he is complaining about the lack of a date, the complaint is without substance. "The essential purpose of a deficiency notice is to provide a formal notification that a deficiency in taxes has been determined." Mayerson v. Commissioner,47 T.C. 340, 349 (1966). The notice sent to petitioner *311 at Anchorage unquestionably fulfilled that purpose, he is complaining that the notice was mailed after the expiration of the three-year statute of limitations for 1972, he has stipulated that it was mailed on or before April 15, 1976. The mailing of the notice on that date was timely, since the mailing date would have to have been within three years after April 15, 1973, the date on which petitioner's 1972 return is considered. Secs. 6072(a) and 6501(b)(1). We proceed to a consideration of the substantive issues. I. Interest Expense
Petitioner claimed a $ 5,000 deduction for "interest expense" in each of the years in question. Respondent disallowed the claimed deductions on the ground that petitioner did not establish that any amount was expended, or, if expended, was expended for the payment of interest. Section 163(a) states: There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. In order for petitioner to be entitled to an interest deduction he must show that (1) an indebtedness existed and (2) he paid interest on that indebtedness. As we do not believe that petitioner has shown that either of these prerequisites *312 for an interest deduction was present, we must accordingly hold that he is not entitled to the claimed interest expense deductions. An "indebtedness" is an existing, unconditional, and legally enforceable obligation for the payment of a principal sum. E.g., Gilman v. Commissioner,53 F.2d 47, 50 (C.A. 8, 1931), affirming 18 B.T.A. 1277 (1930); George T. Williams,47 T.C. 689, 692 (1967), affd. 409 F.2d 1361 (C.A. 6, 1968), certiorari denied 394 U.S. 997 (1969). [4]/ Petitioner attempted to establish the indebtedness by his testimony and by a photocopy of a loan contract. According to petitioner's testimony, David O. Martin, a person whom he claims to have met in 1969 and to have seen every two to three months, agreed in mid-1971 to lend petitioner $ 50,000 in cash. Petitioner testified that the funds allegedly received from Martin were to be used to establish an insurance business. Petitioner also testified that he received the $ 50,000 in cash on January 3, 1972, and kept the cash intact until December 31, 1973, at *313 which time he returned the cash to Martin. Petitioner first testified that he kept the cash in his apartment, but later testified that the cash might have been in a safety deposit box, and that he was not sure where it had been kept. Petitioner also introduced into evidence a photocopy of a document entitled "PERSONAL LOAN" which was notarized on November 13, 1972, more than ten months after the cash had allegedly been received. The loan document stated in part as follows: Ten years after Jan. 3, 1972, FOR VALUE RECEIVED, I the undersigned promise to pay David O. Martin, the sum of One Hundred Thousand ($ 100,000.00) Dollars, with interest at the rate of Ten (10%) Percent per annum until paid. The undersigned hereby agrees to pay Five Thousand ($ 5,000.00) Dollars at yearly intervals commencing Dec. 30, 1972, and at regular yearly intervals thereafter for nine (9) payments, and Fifty-five Thousand ($ 55,000.00) Dollars, as the last payment, or at such other times as may be mutually arranged between David O. Martin, and the undersigned, but no later than Dec. 30th of each year. We do not find petitioner's testimony concerning the loan credible. We simply cannot believe *314 that anyone, no matter how good a friend, would have advanced $ 50,000 in cash to petitioner and then wait ten months before obtaining any written evidence of the loan. Nor can we believe that he kept an amount of cash greater than his total gross income for three years "laying around the house" because he might need it at some indefinite future date. And finally, we cannot believe that petitioner could not now remember exactly where he had kept the $ 50,000 in cash, if he had actually had such a sum of money in his possession. In light of these and numerous other imporabilities in petitioner's testimony, we are forced to conclude that the cash loan transaction never occurred. As we do not believe that the cash loan transaction described ever occurred, we must conclude that petitioner was never "indebted" within the meaning of section 163, even though he signed what purported to be a loan contract. The alleged contract never was legally enforceable as there was no consideration to support it. See, e.g. Estate of Bogley v. United States,514 F.2d 1027, 1033 (Ct. Cl. 1975); Hensel v. U.S. Electronics Corporation,262 A.2d 648 (Del.1970); Sonnichsen v. Streeter,239 A.2d 63 (Cir. Ct. Conn. 1967); *315 17 C.J.S. Contracts sections 129 and 130 (1963). As there was no "indebtedness" within the meaning of section 163, petitioner cannot deduct any "interest payments", allegedly made. Even if petitioner had established an indebtedness, he would not be entitled to an interest expense deduction as he has not shown that the cash "interest payments" which he aleges he made, were actually made. Petitioner produced his savings account bank statements to show that he had the funds to make the alleged interest payments in cash. These statements show a withdrawal of $ 2,175 on December 28, 1972, and a withdrawal of $ 5,000 on December 31, 1973. To show that these funds were expended on interest payments, petitioner produced two receipts of $ 5,000 "interest" signed "David O. Martin." The "receipts" were dated December 28, 1972, and December 31, 1973. We do not find that these "receipts" are credible evidence that the payments were made. We find it particularly difficult to believe that petitioner made a $ 5,000 cash payment on December 28, 1972. Petitioner testified that he made the payment with the $ 2,175 withdrawn from his savings account and additional cash which he had on hand. *316 The cash which petitioner would have had to have on hand, $ 2,825, would equal approximately one-fifth of his total income for the year. We cannot believe that petitioner could have such a sum on hand. We believe that respondent must be sustained on this issue. II. Office-in-Home
Petitioner claimed deductions of $ 652.71 in 1972 and $ 650.78 in 1973 as office-in-home expenses. Petitioner obtained his figure by allocating one-third of the expenses related to his apartment, to his activities involving his insurance plan. As expenditures for housing and utilities are generally non-deductible personal or living expenses within the meaning of section 262, the expenses here involved are deductible only if they fall within the ambit of section 162 or 212. Section 162 authorizes a deduction for all the ordinary and necessary expenses, paid or incurred in carrying on any trade or business. Section 212 allows individuals to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year - - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income." In order for *317 an expense to be deductible under section 162 it must be attributable to a "trade or business". * * * The phrase 'trade or business' must refer not merely to Acts engaged in for profit, but to extensive activity over a substantial period of time during which the Taxpayer holds himself out as selling goods or services.* * * [5]/ Petitioner's insurance plan activities can, at most, be characterized as exploratory, investigative, and preparatory to entering a trade or business.
* * * Expenditures incurred in investigating a potential new trade or business or in preparation for the possibility of entering into a new trade or business have been held not to have been incurred in connection with a trade or business so as to be deductible in computing taxable income. Frank v. Commissioner, supra; 4A Mertens, Law of Federal Income Taxation, § 25.08, p. 34; cf.McDonald v. Commissioner of Internal Revenue, 1944, 323 U.S. 57, 65 S. Ct. 96, 89 L.Ed. 68. See generally Fleischer, The Tax Treatment of Expenses Incurred in Investigation for a Business or Capital Investment, 14 Tax L. Rev. 567 (1959). *318 [6]/ Thus, the office-in-home expenses are not deductible under section 162. Nor are such exploratory expenditures deductible under section 212. Weinstein v. United States,420 F.2d 700 (Ct. Claims 1970); Dean v. Commissioner,56 T.C. 895 (1971). See, sec. 1.212-1(f), Income Tax Regs.
Thus, petitioner is not entitled to the claimed deductions of office-in-home expenses, and respondent must be sustained on this issue. III. Cash Contributions. Respondent disallowed deductions of $ 250 claimed as cash contributions under section 170 in 1972 and 1973. Petitioner's only substantiation for these claimed expenditures was his testimony. His testimony regarding the contributions was indefinite and general, and he was uncertain as to where and how all the claimed donations were made. We cannot find that petitioner's testimony was sufficient evidence to overcome the presumption of correctness which attaches to respondent's determination. Respondent's disallowance must be sustained. IV.Additions to Tax
Respondent determined that petitioner's *319 underpayment of tax in 1972 and 1973 was due to negligence or intentional disregard of rules and regulations and imposed the five percent addition to tax authorized by section 6653(a). Respondent stated on brief that the basis of his imposition of the additions to tax was petitioner's failure to maintain adequate records to support the claimed deductions for interest expense for the years 1972 and 1973. As explained in the discussion of the first issue in this Opinion, we do not believe that there was any $ 50,000 received from Martin by petitioner, nor any payment of $ 5,000 of interest by petitioner to Martin or anyone else. The underpayments of tax here involved are due, in overwhelming part, to the disallowance of the $ 5,000 interest expense deduction in each year. We think that the underpayments were due, at the very least, to negligence or intentional disregard of rules and regulations. Respondent's imposition of the addition to tax under section 6653(a) must be sustained. * * *
There are indications in the record that if petitioner is not permitted the interest expense deduction, it may be to his advantage to use the standard deduction in lieu of the other itemized *320 deductions claimed on his returns. If the standard deduction would be to petitioner's advantage, the parties should utilize the same in the recomputation under Rule 155. Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.
2. /↩ Claimed on the amended return for 1972. 3. / Consisting of $ 1,742.19 claimed on petitioner's 1972 return plus $ 208.80 claimed on petitioner's amended return for that year.↩
4. /Howlett v. Commissioner,56 T.C. 951, 960↩ (1971) (Footnote omitted).
5. /McDowell v. Ribicoff,292 F.2d 174, 178↩ (3rd Cir. 1961).
6. /Stanton v. Commissioner,399 F.2d 326, 329↩ (5th Cir. 1968).