RONALD W. SHOLUND AND ELIZABETH G. SHOLUND, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ELMER F. ERICKSON AND MARY C. ERICKSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2350–67, 2351–67.   Filed June 24, 1968.

*Ronald W. Sholund*, for the petitioners.
*Millard D. Lesch*, for the respondent.

FAY, *Judge:* Respondent determined deficiencies in the Federal income taxes of petitioners as follows:

| Docket No. | Petitioners | Year | Amount |
|---|---|---|---|
| 2350–67 | Ronald W. and Elizabeth G. Sholund | 1964 | $426.94 |
| | | 1965 | 251.73 |
| 2351–67 | Elmer F. and Mary C. Erickson | 1964 | 366.63 |
| | | 1965 | 293.53 |

Various adjustments made in the statutory notice of deficiency in each docket have been stipulated to by the parties. Because the petitioners in docket No. 2350–67 did not contest a portion of one of the adjustments relating to 1964, we hold that portion to be conceded. The issues remaining for determination are (1) whether petitioners in both dockets must report interest income in 1964 and 1965 and gain from the sale of property in 1965, and (2) whether respondent properly disallowed various alleged business expenses in docket No. 2350–67 in both 1964 and 1965.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is hereby incorporated by this reference.

Ronald W. Sholund (hereinafter referred to as Ronald) and Elizabeth G. Sholund are husband and wife. They resided at Olympia, Wash., at the time the petition herein was filed. They filed joint Federal income tax returns for the calendar years 1964 and 1965 with the district director of internal revenue at Tacoma, Wash.

Petitioners Elmer F. Erickson and Mary C. Erickson, Ronald's mother (hereinafter referred to as Mary), are husband and wife. They resided at Olympia, Wash., at the time the petition herein was filed. They filed joint Federal income tax returns for the calendar years 1964 and 1965 with the district director of internal revenue at Tacoma, Wash.

In 1964 Ronald and Mary were members of a partnership known as the Evergreen Ballroom. Ronald had a one-sixth interest and Mary had a two-thirds interest in the partnership.[1] During that year the partners retained the services of Tacoma Realty, Inc. (hereinafter referred to as Realty), a real estate broker, to attempt to locate a purchaser for the Evergreen Ballroom.

Realty found a prospective purchaser, Richard B. Campbell (hereinafter referred to as Campbell). Campbell made an offer of $55,000, with $10,000 as a cash downpayment. The partners decided to accept the offer and the sale was completed.

All papers relating to the transaction were prepared by Realty. The "Earnest Money Receipt and Agreement" prepared by Realty provided as follows:

Received from RICHARD B. CAMPBELL & MADELINE M. CAMPBELL (husband & wife) TEN THOUSAND AND NO/100 Dollars ($10,000.00) $1,000.00 in cash and an additional $9,000.00 in cash on date of closing * * * paid to agent as earnest money and part payment on the purchase price * * *

---

[1] The record does not indicate the ownership of the remaining one-sixth partnership interest.

Total purchase price is FIFTY FIVE THOUSAND AND NO/100 Dollars ($55,000.00) balance of $45,000.00 to be paid as follows: By a real estate contract payable at the rate of $300.00 or more per month including interest at The rate of 6% on deffered [sic] monthly balances, 1st payment due 30 days after date of possession and due on that date monthly thereafter until entire amount of principal and interest are paid in full. * * *

  ✻  *  ✻  *  *  *  *

        (Signed) Richard B. Campbell
        (Signed) Madeline M. Campbell

We approve this sale and agree to deliver deed or contract for deed in accordance with the terms of this agreement, and pay to Tacoma Realty, Inc., agent, a commission of $4,000.00 for services rendered. In the event the Earnest Money is forfeited, the same, after deduction of expenses incurred by the agent, shall be divided equally between the seller and agent. SEE COMMISSION AGREEMENT attached hereto and is part of this Earnest money agreement.

        (Signed) Mary C. Erickson
        (Signed) Ronald W. Sholund

The commission agreement provided as follows:

It Is Understood and Agreed that the undersigned owe TACOMA REALTY, INC. * * * a commission of Four Thousand and No/100 Dollars ($4,000.00) for services rendered in securing a purchaser and consumating [sic] a sale on the Evergreen Ballroom. * * *

It Is Further Understood and Agreed that the referred to commission may be deferred if so desired by the undersigned. The payments shall be Three Hundred and No/100 Dollars ($300.00) or more per month without interest. Said Three Hundred and No/100 Dollars ($300.00) shall be payable only if the contract purchasers make their payments on the referred to contract. Payments are to be made only to The National Bank of Commerce, Olympia Branch, Olympia, Wash., until above-stated amount of commission is paid in full.

Now, It Is Further Understood and Agreed, that if it should become necessary for the undersigned to bring action against the purchasers for fulfillment of said Real Estate Contract and Conditional Sales Contract that the balance of commission then due shall be paid to TACOME [sic] REALTY, INC. upon final disposition of the action only if full purchase price is recovered.

Dated this 30th day of October, 1964.

        (Signed) Mary C. Erickson
        (Signed) Ronald W. Sholund

Ronald and Mary (the sellers) then authorized the bank to receive the contract payments from Campbell. The bank was instructed to remit the $300 monthly payments to Realty until the $4,000 commission was paid in full.

Campbell made timely contract payments of $300 a month to The National Bank of Commerce, Olympia Branch, Olympia, Wash., from December 1964 to December 1965.

On their Federal income tax returns for 1964 and 1965, petitioners reported the sale of the Evergreen Ballroom as follows: [2]

---

[2] While the record is not clear about the matter, petitioners apparently intended to elect, under sec. 453, to report their gain from the sale of the Evergreen Ballroom on the installment basis. In his brief, respondent assumes that petitioners did in fact elect to report their gain on the installment basis.

|  |  | Interest | Gain from sale [3] |
|---|---|---|---|
| Mary | {1964 | 0 | $2, 465. 25 |
|  | {1965 | 0 | 0 |
| Ronald | {1964 | 0 | 616. 31 |
|  | {1965 | 0 | 0 |

In his statutory notices of deficiency for the taxable years 1964 and 1965, respondent made the following adjustments to petitioners' taxable incomes:

|  |  | Interest |  | Gain from sale |  |
|---|---|---|---|---|---|
| Mary | {1964 | Increase | $150. 00 | Decrease | $772. 86 |
|  | {1965 | Increase | 1, 780. 15 | Increase | 156. 18 |
| Ronald | {1964 | Increase | 37. 50 | Decrease | 9. 23 |
|  | {1965 | Increase | 445. 04 | Increase | 56. 03 |

Respondent's interest adjustments relate to petitioners' sale of the Evergreen Ballroom.[4]

During the taxable years 1964 and 1965 Ronald was an attorney-at-law practicing in Olympia. In 1964 he ran for election to the office of Superior Court Justice for Thurston and Mason Counties, Wash. He paid a filing fee of $150 to the secretary of state of the State of Washington in connection with his candidacy. In addition, he expended $507.83 for advertising during his campaign. Ronald was unsuccessful in his campaign for this office.

During the years in question, Ronald's law practice required him to engage in little, if any, travel. Most of his time was spent in his office which was located in the courthouse building. During this period he and his wife owned only one automobile. He was in the habit of walking to his office and the automobile was left at home for the convenience of his wife. She had the automobile for her personal use at all times during the day. The automobile was used by Ronald and his wife for personal travel in the evenings and on weekends. Ronald expended the following amounts in connection with the operation and maintenance of the automobile: $674.48 in 1964 and $521.64 in 1965.

During the years in issue Ronald belonged to the Olympia Country and Golf Club, located some 7 miles from his home. Both he and his family used the facilities of the club. Ronald, on many occasions,

---

[3] These figures represent the gain as included in taxable income.

[4] Because some of the pages of the statement attached to the statutory notices of deficiency are not in the record, it is impossible to determine with certainty to what the gain-from-sale adjustments relate.

played golf at the club. He would not prearrange a match but would try to "pick up" a match with new members. Ronald's club dues for the years 1964 and 1965 were $238.68 and $303.12, respectively.

On his return for the year 1964 Ronald claimed the following business deductions: The cost of the election campaign, 90 percent of the expenses of operation and depreciation of the automobile, and golf club dues. On his return for the year 1965 he claimed a business deduction for 90 percent of his automobile operation expenses and depreciation, and golf club dues. All of the above deductions were disallowed by respondent.

### OPINION

The first issue for determination is whether petitioners must report interest income in 1964 and 1965 and gain in 1965 because of the sale of the Evergreen Ballroom in 1964. Petitioners have the burden of proof on the issue.

Petitioners' only theory in support of their position on this issue is that they were not legally obligated to pay the $4,000 commission to Realty. They argue that they were mere conduits with respect to the contract installments Campbell paid in 1964 and 1965. They conclude that they are not required to report interest income in 1964 and 1965 and gain in 1965 because of the sale of the Evergreen Ballroom in 1964.

Petitioners have failed to show the relevance of their theory to the questioned adjustments in the statutory notices of deficiency. The record does not contain some of the portions of the statement attached to the statutory notices which explain these adjustments. Nor does it contain evidence sufficient to explain petitioners' exact method of reporting the Evergreen Ballroom transaction. Also, the record does not contain adequate evidence to establish petitioners' basis in the Evergreen Ballroom property. In view of these and other gaps in the record, the Court can only speculate as to the relevance of petitioners' argument to the questioned adjustments in the statutory notices of deficiency.

In any event, we do not agree with the "conduit" theory advanced by petitioners. Petitioners retained the services of Realty to facilitate the sale of the Evergreen Ballroom. Realty found a purchaser and the sale was consummated. The obligation to pay Realty its commission was that of the petitioners. The portion of the "Earnest Money Receipt and Agreement" signed by the petitioners Mary and Ronald, as well as the commission agreement, clearly establishes this liability as that of Mary and Ronald. The fact that such liability was contingent on payments being made by Campbell to petitioners in no way alters this fact. The authorization given by them to the bank to remit payments to Realty directly is merely a convenient method of payment. We there-

fore conclude that petitioners were not "mere conduits" with respect to the contract installments Campbell paid in 1964 and 1965. See *Wagegro Corporation*, 38 B.T.A. 1225, 1228–1229 (1938). We accordingly hold for respondent on this issue.

The second issue for determination is whether respondent properly disallowed various alleged business expenses claimed by Ronald in 1964 and 1965. In 1964 Ronald claimed, as expenses of his law practice, the cost of an unsuccessful campaign for a local judgeship, automobile operation and maintenance expenditures and depreciation, and golf club dues. The latter two classes of expenditures were claimed again as expenses of his law practice in 1965.

The deductibility of the various expenses involved herein is essentially a question of fact, *Commissioner* v. *Heininger*, 320 U.S. 467 (1943), and, of course, the burden of proof is upon Ronald.

In order that an expenditure be deductible under section 162(a)[5] it must be both ordinary and necessary in the carrying on of a trade or business. Ronald must demonstrate both that the expenditures were not made for primarily social or personal purposes and that there existed a proximate relationship between the claimed expenditures and his trade or business. *Chas D. Long*, 32 T.C. 511 (1959), affd. 277 F. 2d 239 (C.A. 8, 1960); *Alexander P. Reed*, 35 T.C. 199 (1960); and *Robert Lee Henry*, 36 T.C. 879 (1961).

In reference to the campaign expenditures, Ronald concedes that such items are not normally deductible. See *McDonald* v. *Commissioner*, 323 U.S. 57 (1944); *Maness* v. *United States*, 367 F. 2d 357 (C.A. 5, 1966), certiorari denied 386 U.S. 932 (1967); *Campbell* v. *Davenport*, 362 F. 2d 624 (C.A. 5, 1966); *Shoyer* v. *United States*, 290 F. 2d 817 (C.A. 3, 1961). He contends, however, that rather than seeking election he was attempting to further his law practice.

In reference to the expenses and depreciation deductions related to the family automobile, he acknowledges that it was at the general disposal of his wife. On brief, however, he states that:

In securing probate practice, a wife is almost as much a contributing factor as the husband. Her use of the car in attending social and fraternal functions is a legitimate deduction.

Finally, in reference to the golf club dues, he again argues that such an expenditure is generally in furtherance of his law practice.

It is our opinion that Ronald has failed to meet his burden of proof on all three of the above items of expense. As we stated in *Louis Boehm*, 35 B.T.A. 1106, 1109–1110 (1937):

[5] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

We do not think the burden of proof is met by the petitioner's argument that in general, membership in social, political, and fraternal organizations is helpful in obtaining clients through contacts made thereby * * * No evidence has been introduced to show that any part or all of the expenditures in question were so closely related to the conduct of the petitioner's business as to have been appropriate, helpful, usual, or necessary. It is noted that in cases where expenditures of a social nature have been held to be deductible business expenses proof was presented to show that such expenditures had a direct relation to the conduct of a business or the business benefits expected. Such proof has not been presented here * * *

See *Robert Lee Henry, supra; Alexander P. Reed, supra;* and *Ralph E. Larrabee,* 33 T.C. 838 (1960).

In the case at bar, Ronald has not presented any evidence that the expenditures in question had a direct relation to the conduct of his business or the business benefits expected. He has, therefore, failed to meet his burden of proof and, consequently, respondent's disallowance of the claimed deductions must be sustained. Due to concessions by each party,

*Decisions will be entered under Rule 50.*