JOSEPH W. MARTINO AND HELEN MARTINO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6263–73.    Filed September 23, 1974.

*Anthony J. Sestric*, for the petitioners.
*David R. Bosse*, for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined a deficiency of $3,017.30 in petitioners' Federal income tax for the year 1971. The only issue presented for our decision is whether legal expenses incurred by petitioner Joseph W. Martino while defending against an election contest suit qualify for deduction either as ordinary and necessary business expenses under section 162 or for the production of income under section 212, I.R.C 1954,[1] or pursuant to the provisions of section 183 as expenses incurred in activities not engaged in for profit.

All of the facts have been stipulated by the parties. We adopt the stipulation of facts and the exhibits attached thereto as our findings. The pertinent facts are summarized below.

Petitioners resided in St. Louis, Mo., at the time they filed their petition herein. Helen Martino, the wife of Joseph W. Martino, is a party to this proceeding only by virtue of having filed a joint Federal income tax return with her husband. Joseph W. Martino will be referred to herein as the petitioner.

Petitioner is currently an elected member of the St. Louis Board of Aldermen representing the eighth ward. Spanning more than two decades, petitioner's record of public service to the eighth ward includes 10 years as its elected State representative to the Missouri General Assembly, from 1949 until 1959, and four consecutive terms as its voice on the board of aldermen, from 1959 to 1975. Throughout this period petitioner's political development was facilitated by his affiliation with the Eighth Ward Regular Democratic Organization, a powerful local political association whose sponsored candidates have swept every primary and general aldermanic election held in the eighth ward since 1932.

Members of the board of aldermen serve 4-year terms commencing on the third Tuesday in April in the election year. On November 6, 1970, as petitioner's third term was approaching its conclusion, he filed to run for reelection as the incumbent Democratic candidate from the eighth ward for a term of office beginning April 20, 1971, and expiring April 14, 1975.

The initial hurdle facing petitioner's reelection bid was a primary election to be held on March 9, 1971. Competition for the Democratic nomination for the forthcoming general election was supplied by a single opponent, Bruce T. Sommer. After a close race, petitioner, again sponsored by the Eighth Ward Regular Democratic Organization, prevailed by a mere six votes and was awarded the Democratic nomination in the general election to be held on April 6, 1971. Bruce T.

---

[1] All statutory references herein pertain to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Sommer contested the election results by filing suit against petitioner in the Circuit Court of the City of St. Louis on March 19, 1971. Petitioner retained counsel and defended his victory in a legal battle which, due to the procedural issues involved, went to the St. Louis Court of Appeals and the Missouri Supreme Court before the election results were finally upheld in the Circuit Court for the City of St. Louis. Petitioner won the subsequent general election by a substantial margin and took the oath of office on April 20, 1971, for his fourth term as alderman from the eighth ward.

Counsel retained for the election contest defense presented petitioner with a bill for legal services totaling $8,000 which was paid in full by check on April 13, 1971. Petitioner timely filed his Federal income tax return for 1971 with the district director of internal revenue, St. Louis, Mo., and reported as an itemized miscellaneous deduction "Legal Fees Protecting Job" in the amount of $8,000. Respondent subsequently disallowed this deduction, thus precipitating the present controversy.

Once more a candidate for elected public office seeks judicial sanction of a deduction taken for expenses related to the functioning of the election process. The familiar legal questions presented to us in the instant case arise in connection with previously unlitigated expenses. However, our determination as to the status of these expenses will necessarily rest upon the degree to which extant decisions remain persuasive when applied to the particular facts involved herein.

The courts have not allowed candidates for public offices to deduct their election-related expenses under sections 162 and 212. The leading authority for this position is *McDonald v. Commissioner*, 323 U.S. 57 (1944), affirming 139 F. 2d 400 (C.A. 3, 1943), affirming 1 T.C. 738 (1943), where the Supreme Court held that a State court judge serving an interim appointment could not deduct either a party assessment or campaign expenses under the predecessor of sections 162 and 212 (section 23(a), I.R.C. 1939[2]). After a careful review of public policy considerations militating against allowance of such deductions[3] and the uniform history of "disallowance * * * reflected by legislative history, court decision, Treasury practice and Treasury regulations," 323 U.S. at 62, the Supreme Court concluded that the expenses in issue were nondeductible on the ground that they related to office-seeking

---

[2] A comparison of sec. 23(a)(1) and sec. 23(a)(2), I.R.C. 1939, with sec. 162(a) and sec. 212(1), I.R.C. 1954, reveals that the replacement sections are identical to the respective subsections from which they are derived.

[3] This public policy was articulated in *Mays* v. *Bowers*, 201 F. 2d 401, 403 (C.A. 4, 1953), as follows:

"If such deductions should be allowed, the government to the extent of the reduction in taxes thereby obtained would be paying the campaign expenses of the taxpayer, and would be paying a larger portion in the case of a wealthy taxpayer in the high income brackets than of a poor taxpayer in the lower brackets. * * *"

activities rather than to activities normally engaged in by officeholders. The line of demarcation presented to this Court and others in *McDonald* has engendered a uniform denial of claimed deductions for campaign expenditures in accordance with its provisions.[4]

Petitioner endeavors to persuade us that the expenses he incurred in defense of his aldermanic primary victory do not fall within the *McDonald* guidelines of nondeductibility, but rather within the province of necessary legal expenses incurred by an officeholder defending against attacks upon his right to hold office. *Commissioner* v. *Tellier*, 383 U.S. 687 (1966); *United States* v. *Gilmore*, 372 U.S. 39 (1963); *James B. Carey*, 56 T.C. 477 (1971), affirmed per curiam 460 F. 2d 1259 (C.A. 4, 1972), certiorari denied 409 U.S. 990 (1972). Emphasizing his longstanding political association with the Eighth Ward Regular Democratic Organization and its unblemished record of victories in every primary and general aldermanic election since 1932, the petitioner contends that his victory in the March 9, 1971, primary was tantamount to a victory in the general election subsequently held on April 6, 1971. Therefore, he argues that the legal expenses in issue are properly deductible as ordinary and necessary business expenses incurred by an officeholder protecting his right to that office.[5]

Despite the impressive record of the Eighth Ward Regular Democratic Organization and the fact that petitioner, as its representative, prevailed once again in the April 6, 1971, general election, we are constrained to hold that a primary victory does not endow a party's nominee to a subsequent general election with the same status enjoyed by a candidate emerging from that general election as the certified choice of the electorate. No primary victor has concrete assurance of winning the general election. Indeed, intervening events and changes in public opinion have terminated substantially longer episodes of political dominance by one party.

---

[4] *Maness* v. *United States*, 367 F. 2d 357 (C.A. 5, 1966), certiorari denied 386 U.S. 932 (1967); *Shoyer* v. *United States*, 290 F. 2d 817 (C.A. 3, 1961), certiorari denied 368 U.S. 835 (1961); *Mays* v. *Bowers*, 201 F. 2d 401 (C.A. 4, 1953), certiorari denied 345 U.S. 969 (1953). See also *Long* v. *Commissioner*, 277 F. 2d 239 (C.A. 8, 1960); *Davenport* v. *Campbell*, 238 F. Supp. 568 (N.D. Tex. 1964); *Horace E. Nichols*, 60 T.C. 236 (1973), on appeal (C.A. 5, Aug. 9, 1973); *James B. Carey*, 56 T.C. 477 (1971), affirmed per curiam 460 F. 2d 1259 (C.A. 4, 1972), certiorari denied 409 U.S. 990 (1972); *William H. Maness*, 54 T.C. 1602 (1970); *Ronald W. Sholund*, 50 T.C. 503 (1968).

[5] Petitioner cites *Terry* v. *Adams*, 345 U.S. 461 (1953), as controlling authority for the proposition that a primary victory is tantamount to a victory in the general election whenever the primary victor has the support of a political party with an extended succession of victories in both elections. That case involved political dominance by a racially selective party and the attendant deprivation of due process arising out of a minority's effective exclusion from any role in the election process. The issues presented to us here do not involve invidious attacks upon constitutionally guaranteed rights and privileges; they pertain instead to whether petitioner held a certain status at the time he incurred these expenses and the accompanying Federal income tax consequences. Therefore, we think the holding in *Terry* must be limited to the factual situation from which it was derived and that it is not determinative of the issues before us now.

Petitioner alleges further that the expenses in issue are not "campaign expenses," and contends that their failure to fit within that classification leaves them deductible under sections 162 and 212. Although the legal expenses here are clearly not campaign expenses in the traditional sense—such as advertising, printing, traveling, barbecues, and other outlays designed to influence directly the opinions of individual voters—certain other expenditures which have little, if any, influence on public opinion have either been classified as campaign expenses or disallowed as deductions for income tax purposes along with the more traditional expenses. In *Mays v. Bowers*, 201 F. 2d 401 (C.A. 4, 1953), certiorari denied 345 U.S. 969 (1953), the Court of Appeals for the Fourth Circuit included "party campaign contributions" within its definition of campaign expenses. 201 F. 2d at 403. The Supreme Court in *McDonald* suggested that among "customary campaign expenses" are included outlays for advertising, printing, and traveling. 323 U.S. at 58–59. The taxpayer in *McDonald* was forced to pay his political party an "assessment" before receiving its sponsorship during his campaign for a judgeship on the Court of Common Pleas of Luzerne County, Pa. The amount of each candidate's mandatory assessment, utilized to defray a portion of the party's campaign expenses, was determined on an individual basis in proportion to the prospective salary to be received by a successful candidate. The Supreme Court denied each of the taxpayer's claimed deductions, stating that:

his campaign contributions were not expenses incurred in *being a judge* but in *trying to be a judge* for the next ten years. That is as true of the money he spent more immediately for his own reelection as it is of the "assessment" he paid into the party coffers for the success of his party's ticket. * * * [323 U.S. at 60. Emphasis supplied.]

Recent decisions of this Court reflect our adherence to the principle established in *McDonald* whether deductions are claimed for the costs of seeking a public office, *Horace E. Nichols*, 60 T.C. 236 (1973), on appeal (C.A. 5, Aug. 9, 1973), or a quasi-public office, *James B. Carey*, 56 T.C. 477 (1971), affirmed per curiam 460 F. 2d 1259 (C.A. 4, 1972), certiorari denied 409 U.S. 990 (1972).[6] Petitioner's constant reference to *David J. Primuth*, 54 T.C. 374 (1970), is unwarranted because the

---

[6] A contrary result was reached in *Graham v. Commissioner*, 326 F. 2d 878 (C.A. 4, 1964), where the proxy expenses of a taxpayer seeking election to a corporate board of directors were approved for deduction under sec. 212. The taxpayer in *Graham* owned a substantial portion of the company's outstanding stock. Distinguishing between large and small percentage shareholders, the Court of Appeals for the Fourth Circuit reasoned that since the taxpayer, once elected, could influence company policy in favor of his stockholdings, he could therefore expect to profit from his election beyond the limits of the normal compensation paid directors. This led to a conclusion that his expenses were suffered during "the management, conservation, or maintenance of property held for the production of income." Sec. 212(2), I.R.C. 1954. No evidence was offered here that the petitioner would be presented with such an opportunity, if elected.

deductions allowed in that case pertained to employment fee expenses incurred by an individual seeking a job in private industry. The public policy considerations surrounding deductions for election-related expenses in the public and quasi-public sectors do not extend to an individual pursuing private, nonelective positions.

Revenue rulings issued by the respondent indicate his adherence to *McDonald*. Rev. Rul. 53–1, 1953–1 C.B. 36, denied the deductibility for a public officer's legal expenses, incurred both before and after taking the oath of office, relating to his efforts to establish the fairness of the election and his entitlement to that office. Rev. Rul. 71–470, 1971–2 C.B. 121, incorrectly cited by petitioner as inconsistent with Rev. Rul. 53–1, is in fact complementary with that ruling because it allows an officeholder to deduct the expense of defending his right to office in a special recall election brought by persons seeking to depose him. See also Rev. Rul. 74–394, 1974–2 C.B. 40. The categorization of some of these expenditures as "campaign expenses" is not fatal to their deductibility since, according to *McDonald*, they are ordinary and necessary under the circumstances.

We recognize that the "assessments" present in *McDonald* and *Nichols* were eventually utilized by the parties to cover expenses analogous to the candidates' own "campaign expenses." But we are not convinced that petitioner's legal expenses should be classified as "campaign expenses." We find, nevertheless, that a broad category of election-related expenditures are nondeductible under sections 162 and 212, of which traditional "campaign expenses" occupy only one subdivision.

Several other expenditures associated with a candidate's efforts to attain public office, such as the pay of poll watchers, are nondeductible despite their failure to affect directly voters' opinions. We hold that petitioner's legal expenses fall within this broad category of nondeductible expenditures which are a part of "the price paid for an active share in the hazards of popular elections." See *McDonald* v. *Commissioner*, 323 U.S. at 61. The legal fees contracted by petitioner in defending his primary victory were a part of the general expenditures made by him to attain the office of city alderman. While not what we traditionally consider to be "campaign expenses," they are sufficiently analogous to the assessments present in *McDonald* and *Mays* and the required fees in *Maness* and *Davenport* that we regard them as being unrelated to the normal functions of an alderman, and hence nondeductible. This Court continues to follow the position it articulated in *Nichols*:

the question we have before us is whether this Court should allow, in the absence of an explicit legislative mandate, the deduction of expenditures that are an inextricable part of the election process—one of the most sensitive elements in the fabric of the democratic way of life. We think that the considerations involved in such a question and the fact that the Supreme Court

has spoken in an almost identical situation demand that we stay our hand. [60 T.C. at 239.]

Petitioner asserts that the instant legal fees should be deductible since he was required by State statute to defend his apparent primary victory. Mo. Ann. Stat. secs. 124.010 and 124.020 (Vernon 1966). In opposition to this contention lie a series of decisions denying similar claims under sections 162 and 212 concerning fees required of candidates for public office by the laws of various States. *Maness* v. *United States*, 367 F. 2d 357 (C.A. 5, 1966), certiorari denied 386 U.S. 932 (1967) (candidate required by Florida law to pay qualifying fee to secretary of state); *Campbell* v. *Davenport*, 362 F. 2d 624 (C.A. 5, 1966) (Texas law required candidate to pay assessment to his political party).[7]

Petitioner's alternative contention that his legal expenses qualify for deduction under section 183 is similarly without merit. That section provides for deductions related to activities not engaged in for profit. Our decision regarding this contention is predicated on three grounds. First, we hold that petitioner's attempt to gain reelection as alderman from the eighth ward is an activity engaged in for profit. Members of the board of aldermen receive a $7,500 annual stipend. No evidence was introduced that petitioner sought this office without any expectation of receiving a net profit. Nor was any evidence submitted that he has ever been required to spend more money while carrying out official functions than he was paid in return. Petitioner's annual salary represented approximately 20 percent of his gross income. Second, the statutory history behind section 183, commonly referred to as the "hobby loss" provision, indicates that it was promulgated by Congress as part of the Tax Reform Act of 1969 in order to close a tax loophole existing under prior law. This abuse of the tax law was undertaken primarily by taxpayers not engaged in farming for profit who continually offset farming "losses" against income derived from their profit-seeking pursuits. U.S. Code Cong. & Adm. News 1645, 1717 (1969). We have held that petitioner was engaged in a profit-seeking activity when he ran for office, a holding which precludes us from classifying his pursuit of office as a "hobby."

Finally, since the courts have uniformly denied deductions for election-related expenditures as violative of public policy, we cannot deny a deduction under sections 162 and 212 and then turn around and grant that deduction under section 183 absent a clear congressional sanction for such an incongruous action.

Accordingly, the petitioner's claimed deduction for legal fees is disallowed.

*Decision will be entered for the respondent.*

---

[7] Prior to the Revenue Act of 1964, Pub. L. 88–272, 78 Stat. 19, sec. 207(a), these payments required by State law were deductible under sec. 164(a). The Revenue Act of 1964 amended sec. 164 so that it now permits deduction only of taxes specifically enumerated therein and those paid or accrued in carrying on a trade or business or in the production of income.