T.C. Memo. 1996-390

UNITED STATES TAX COURT

KATHLEEN A. CARR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6054-95.                    Filed August 21, 1996.

Kathleen A. Carr, pro se.

<u>David R. Jojola</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and
182.  Respondent determined a deficiency in petitioner's 1991
Federal income tax in the amount of $1,819.

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

The sole issue for decision is whether various Schedule C expenses were ordinary and necessary in carrying on petitioner's business as a personal manager.

Some of the facts have been stipulated, and they are so found. The stipulation of facts, the stipulation of settled issues, and the attached exhibits are incorporated herein by this reference. At the time of the filing of the petition, petitioner resided in Los Angeles, California.

When she was 3 years old, petitioner became involved in the entertainment industry as an actress with the Broadway touring company production of "The Sound of Music". In 1985, petitioner became a talent agent for Emerald Artists Agency (Emerald).[2] In 1987, petitioner received a subagent franchise from the Screen Actors Guild, Inc., which licensed petitioner as a talent agent and allowed her to work under her own name rather than Emerald's name. Petitioner was a successful talent agent.

---

[2] A talent agent is a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for artists. In addition, a talent agent may counsel artists in the development of their professional careers. Cal. Lab. Code sec. 1700.4(a) (West 1989). To procure employment for artists, the talent agent must obtain a license from the California Labor Commissioner. Cal. Lab. Code secs. 1700.4 and 1700.5 (West 1989). For this purpose the term "artist" includes actors, actresses, radio artists, musical artists, directors, writers, cinematographers, composers, lyricists, arrangers, models, or others rendering professional services in radio, movies, theater, or television. Cal. Lab. Code sec. 1700.4(b) (West 1989).

At the end of 1988, petitioner decided to leave Emerald to start her own agency.  At the beginning of 1989, petitioner left Emerald and started K.C. & Co.  Through K.C. & Co., petitioner functioned as a personal manager for various artists.[3]

When she left Emerald, petitioner took six artists with her and began looking for other artists to represent.  By the end of 1990, petitioner had developed her own "stable" of artists, including 17 artists who had signed contractual agreements with K.C. & Co.  In these contracts, K.C. & Co. agreed to advise, counsel, and direct the development and enhancement of the artists' careers in exchange for compensation of 10 percent of the artists' gross earnings.  Several artists did not sign contracts with K.C. & Co. because they were newly referred to petitioner and their relationship was on a trial basis.

Part of petitioner's role as personal manager was to promote the careers of her artists.  To promote her artists, petitioner

---

[3]  Unlike a talent agent, a personal manager is not covered by the Talent Agencies Act, Cal. Lab. Code secs. 1700-1700.47 (West 1989), or any other statutory scheme and is not required to obtain a license.  The primary function of a personal manager is that of advertising, counseling, directing, and coordinating the artist in the development of the artist's career.  This function can include personal and business matters of the artist. Waisbren v. Peppercorn Prods., Inc., 41 Cal. App. 4th 246, 253, 48 Cal. Rptr. 2d 437, 440 (1995).  Personal managers may find themselves in situations where they would like to procure employment for their artists; however, to do so, the personal manager must become a licensed talent agent or work in conjunction with a licensed talent agent.  Cal. Lab. Code secs. 1700.4, 1700.5, 1700.44; see Waisbren v. Peppercorn Prods., Inc., supra.

used showcases[4] to demonstrate their talents. Petitioner used the showcases as a method to familiarize entertainment industry professionals with the names, faces, and talents of petitioner's artists so that they would be invited to interviews, and ultimately, obtain a job in the entertainment industry. Numerous casting people, directors, and producers who were involved in the entertainment industry were invited to the showcases so that they could see the work of petitioner's clients.

Petitioner put together a showcase in January 1991, at a small theater in North Hollywood. The theater space was free and held 26 people. The theater was filled by directors, producers, and casting people who were invited by petitioner. Petitioner also organized a showcase at the Coronet Theatre in La Cienega in March 1991. The Coronet Theatre space was free because petitioner knew someone who let her use the space. The 350-person theater was filled with invited entertainment industry people. Some of petitioner's artists obtained interviews or work after this showcase.

In July 1991, petitioner and her artists were invited by Steven Wright Productions to present a showcase at the Convention Center in St. Louis, Missouri. Petitioner's artists were paid

_____

[4] As we understand it, a showcase is a production of short skits, excerpts from theatrical works, musical numbers, or other forms of entertainment which are performed by actors and actresses.

$1,000 for the showcase. In September 1991, petitioner organized a country and western showcase at the Court Theatre in La Cienega. The theater space was free. The theater was filled with about 200 entertainment industry people. Some of petitioner's artists obtained interviews and employment after this showcase.

Petitioner incurred numerous expenses in connection with these showcases. These expenses included advertising and publicity photographs of the showcase which were mailed to producers, directors, and casting agents to invite them to attend the showcases. In addition, petitioner rented a tape recorder and hired a musician, a choreographer, and a musical director to work on the showcases. Petitioner also incurred costs for props and sets for the showcases. Further, petitioner incurred dry cleaning expenses in connection with borrowed costumes that were worn by the artists during the showcases.

Petitioner incurred other expenses in connection with her work as a personal manager. Specifically, petitioner incurred expenses for resumes that contained background information on her artists. These resumes were sent to entertainment industry professionals to promote her artists. In addition, petitioner incurred expenses for resumes for K.C. & Co. that were used to advertise her services and to attract more artists to her agency. In addition, petitioner incurred expenses for reference books and

other materials that she used to find out about the latest trends in the entertainment industry and to obtain information about directors, producers, and casting people.

In 1991, petitioner received wages from Medcom Billing Services of $25,157.05 and gross income from K.C. & Co. of $3,229.75. On the Schedule C, petitioner claimed expenses related to K.C. & Co. which totaled $26,913.43. In the notice of deficiency, respondent disallowed all or part of the expenses claimed, as follows:

| Expense | Claimed | Allowed | Disallowed |
|---|---|---|---|
| Advertising | $2,500.00 | -0- | $2,500 |
| Union dues | 177.50 | $147 | 30 |
| Education | 3,752.00 | -0- | 3,752 |
| Photos | 1,800.00 | -0- | 1,800 |
| Resumes | 53.00 | -0- | 53 |
| Instrument rental | 2,593.00 | -0- | 2,593 |
| Props/sets | 4,270.00 | -0- | 4,270 |
| Education materials | 354.75 | -0- | 355 |
| Airline tickets | 1,553.00 | 1,243 | 310 |
| Dry cleaning | 46.00 | -0- | 46 |
| Car and truck | 3,422.00 | 2,910 | 512 |

In the stipulation of settled issues and the stipulation of facts, the parties stipulated that petitioner was entitled to deduct a total of $3,422 for Schedule C car and truck expenses. At trial, respondent's counsel stipulated that petitioner was entitled to deduct an additional $30 for union dues and $310 for airline tickets. Therefore, these amounts are no longer in dispute.[5]

---

[5] We note that petitioner claimed a Schedule C deduction
(continued...)

Petitioner has substantiated the amounts in dispute. The issue for decision is whether these expenses are ordinary and necessary.

Preliminary Matters

In the stipulation of facts, respondent reserved objections to several joint exhibits. Specifically, respondent objected on the basis of relevancy to Joint Exhibit 4-D, a subagent franchise agreement; Joint Exhibit 5-E, a directory from the Conference of Personal Managers; and Joint Exhibit 10-J, a breakdown of available jobs in the entertainment industry. In addition, respondent objected on the basis of hearsay to Joint Exhibit 7-G, excerpts from a book entitled "Managers', Entertainers', & Agents Book"; Joint Exhibit 8-H, excerpts from a book entitled "How to Manage Talent"; and Joint Exhibit 9-I, an excerpt entitled "But, What Does a Personal Manager Do?" from the National Conference of Personal Managers.

Proceedings in this Court are conducted in accordance with the Federal Rules of Evidence. Sec. 7453; Rule 143. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the

---

[5](...continued)
for repairs and maintenance of $129.47 which was neither allowed nor disallowed by the notice of deficiency and was not mentioned in the stipulation of facts of stipulation of settled issues. Thus, we will assume such amount is not in dispute.

evidence. Fed. R. Evid. 401. Joint Exhibits 4-D and 5-E support petitioner's testimony that she was a licensed talent agent and that she offered her services as a talent agent. These facts are relevant, and we overrule respondent's objection.

With respect to Joint Exhibit 10-J, which is an example of the service petitioner used to find acting parts for her artists, we sustain respondent's objection. The amount claimed by petitioner for this service was allowed in the notice of deficiency and is not in dispute. Therefore, this exhibit is not relevant.

With respect to respondent's hearsay objections, we sustain them. The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Normally, hearsay is excluded from evidence unless an exception to the hearsay rule applies. Snyder v. Commissioner, 93 T.C. 529, 532 (1989). Joint Exhibits 7-G, 8-H, and 9-I are excerpts from reference books and articles which were offered by petitioner to show that her expenses were ordinary and necessary for personal managers. Thus, these exhibits are hearsay.

An exception to the hearsay rule allows the introduction of learned treatises in evidence when they have been established as reliable authority by an expert witness at trial and have been

either relied upon by an expert witness on direct examination or called to his attention on cross-examination. Fed. R. Evid. 803(18). The certain implication from this exception is that statements from treatises that (1) have not been established as reliable authority, (2) were not relied on by an expert at trial, or (3) were not called to an expert's attention at trial are not admissible. Snyder v. Commissioner, supra. The excerpts in issue were neither relied on nor referred to by an expert witness at trial. They were not established as reliable authority by any expert or by judicial notice. Thus, these excerpts are not admissible under the exception to the hearsay rule for learned treatises. None of the other exceptions to the hearsay rule applies in this case. Accordingly, we sustain respondent's objections to these exhibits.

Discussion

Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving that she is entitled to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Section 162(a) provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The terms "ordinary" and "necessary" mean that the expenditure must be normal, usual, and customary, as well as appropriate and helpful to the operation of the business. Commissioner v.

Tellier, 383 U.S. 687, 689 (1966); Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). This usually requires that the expenditure bear a reasonably direct relationship to the taxpayer's trade or business. Commissioner v. Heininger, supra at 470; Deputy v. du Pont, supra at 495; Kennelly v. Commissioner, 56 T.C. 936, 941 (1971), affd. without published opinion 456 F.2d 1335 (2d Cir. 1972); Sholund v. Commissioner, 50 T.C. 503, 508 (1968); sec. 1.162-1(a), Income Tax Regs. The issue of whether the expenses are ordinary and necessary is a question of fact. Commissioner v. Heininger, supra at 475; Walliser v. Commissioner, 72 T.C. 433, 437 (1979).

Because the entertainment industry is visual, publicity is extremely important. As a talent manager, petitioner guided the careers of at least 17 artists. To get these artists work, and generate income for her business, petitioner organized, advertised, and put on showcases for directors, producers, and casting people involved in the entertainment industry to demonstrate the talents of her artists. Because her artists were lesser known individuals, petitioner put together several showcases in an effort to get her artists maximum exposure. Showcases are a common method used by talent managers to get their clients work in the entertainment industry.

All of the expenses at issue were incurred in connection with these showcases or petitioner's business as a talent manager.  We find that the expenses incurred by petitioner both were "ordinary and necessary" within the meaning of section 162(a) and arose out of the conduct of petitioner's business.  In reaching our decision, we have relied on the testimony of petitioner, whom we had an opportunity to observe at trial.  We found her testimony to be candid and credible, as well as supported by the record.  Accordingly, petitioner is entitled to a deduction for the expenses at issue.

To reflect the foregoing resolution of the issues in this case,

<u>Decision will be</u>

<u>entered under Rule 155</u>.