**Woodford D. MILLER and wife, Virginia E. Miller**

v.

**UNITED STATES of America.**

**Civ. A. No. 8165.**

United States District Court, E. D. Tennessee, N. D.

Aug. 14, 1973.

McAfee Lee, Clyde W. Key, Key & Lee, Knoxville, Tenn., for plaintiffs.

John L. Bowers, Jr., U. S. Atty., Charles N. Steadman, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiffs,[1] taxpayers, have filed this action to recover a refund for taxes paid by them in the tax years 1967 and 1968. Upon the proof offered in the stipulations by the parties and upon evidence brought forth at trial, the following facts appear: Prior to May 8, 1967, plaintiff, Woodford D. Miller, held an executive position with Fulton-Sylphon Division of Robertshaw Controls Company. He had been an employee of the company for some 31 years and had risen through the ranks to become General Manager and Vice-President. At one time, he had held the position of Executive Vice-President in Charge of Eastern Operations, a position held by only four men in the history of the company.

On or about May 8, 1967, plaintiff was advised by a letter from the then President, Mr. T. T. Arden, that he was being terminated. The letter further stated:

> "If perchance you do not readily secure another position, we shall proceed on July 1 and, thereafter, will offer you a position as consultant (without portfolio) at a fee of $3,125 per month payable until either you do secure another position or until June 30, 1969."

In accordance with the terms of this agreement, plaintiff received $18,750.00 in the year 1967 and $37,500.00 in 1968.

Within a short period after receiving his termination notice, the evidence shows that Mr. Miller sought the assistance of Frederick Chusid & Company, a professional executive employment finding agency. Pursuant to the agreement with Chusid, taxpayer incurred certain employment seeking expenses which included the monies paid to Chusid under the terms of the agreement and monies expended for travel and lodging relating to various trips to Chusid's office in Chicago.

Plaintiff filed a joint individual income tax return for the year 1967, showing total taxes of $12,102.00, all of which was paid in due time. On the 1967 tax return, the taxpayer reported

---

1. Plaintiff, Virginia E. Miller, is a party to this litigation solely because a joint individual return was filed by her along with her husband, Woodford D. Miller.

Hereinafter "plaintiff" will be used to designate Woodford D. Miller, who is the sole wage earner in this case.

$18,750.00 miscellaneous income, designated "Fee-Robertshaw Controls Co." which amount represented the total payments made to taxpayer by Robertshaw pursuant to the termination agreement for 1967. Plaintiff also reported as a miscellaneous deduction "Employment Seeking Expenses" in the amount of $9,158.00.

On April 15, 1969, plaintiff filed form 1040 for the year 1968 showing taxes of $11,021.00, all of which was duly paid. On this return, $37,500.00 miscellaneous income was reported and designated "Fee-Robertshaw Controls Co." Plaintiff further reported as a miscellaneous deduction $4,580.00, which was designated "Employment Seeking Expenses."

The Internal Revenue Service, pursuant to its audits, disallowed the "Employment Seeking Expenses" deductions claimed. As a result, additional taxes of $4,495.00, plus interest of $902.69 for the year 1967, and $1,673.94 plus interest of $233.59 for the year 1968 were assessed and collected from plaintiff. In due course, plaintiff filed two claims for refund, one for the year 1967 and the other for the year 1968. In each claim for refund, taxpayer seeks to recover (1) the additional tax assessed and collected, plus interest, and (2) the tax assessed and collected as a result of the inclusion of the $18,750.00 and $37,500.00 payments from Robertshaw Controls Company reported as income in the 1967 and 1968 returns.

The Internal Revenue Service disallowed the plaintiff's claims and as a result this suit was duly instituted.

The issues presented for determination are: First, whether the payments from Robertshaw Controls Company to taxpayer pursuant to the termination arrangement were tax exempt gifts or taxable income. Second, whether the expenses incurred by taxpayer while seeking employment were properly deductible. Third, whether, under Title 26 U.S.C. § 6511(b)(2)(B), the plaintiff is barred from recovering that portion of the taxes paid for the calendar year 1967.

The Court was advised by the Government during trial that it concedes that the three-year statute of limitations would not bar the claim for refund of the 1967 taxes. Consequently, this is no longer an issue in the case. The Government further concedes that the employment seeking expenses in the amount of $8,074.32 for 1967 and $3,943.26 for 1968 were properly substantiated, and that such amounts are, therefore, deductible if the Court finds that these expenses are deductible as a matter of law. The Government does contend, however, that plaintiff did not substantiate $179.06 of the 1967 expenses claimed and $278.07 of the 1968 expenses on the ground that such expenses were not properly recorded or accounted for under 26 C.F.R. § 1.274–5.

For the reasons hereafter appearing, it is not deemed necessary to decide this issue.

Plaintiff contends that the amounts received in 1967 and 1968 pursuant to the termination settlement with Robertshaw Controls Company were in effect gifts and were not taxable income. The Government contends that these payments arose out of business transactions between the taxpayer and his former employer and relies on Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), for its position that such monies were income under Title 26 U.S.C. § 61 and not nontaxable gifts.

The evidence clearly shows that Mr. Miller had been with Fulton-Sylphon, a division of Robertshaw Controls Company, and a subsidiary of Reynolds Metals Company, for some thirty-one years. He had risen through the ranks to the position of Executive Vice-President, and at the time of his termination held the position of General Manager and Vice-President of the Fulton-Sylphon Division. The evidence further shows that it was the policy of Robertshaw, a policy that had existed from about 1941, not to precipitately terminate the services of one of its executives. Mr. T. T. Arden, the President of Robertshaw

at the time plaintiff was terminated, testified that whenever a corporate executive was requested to leave, a termination settlement was always paid to the employee. In arriving at a figure for such settlement, an Executive Committee, consisting of the President, the Chairman of the Board, and another Board member, would take into consideration the compensation the employee was then receiving, his length of service, the profit generated by his division, and other subjective factors on the part of the Executive Committee.

Numerous instances were pointed out by the witnesses in which severance pay based on these factors was paid to terminated executives. Generally, the terminated executive received his present salary for a fixed period of time or for a period until he obtained some substitute employment. Furthermore, the terminated executives were retained on the books of the corporation as "consultants" with or without portfolio.

Mr. Arden further testified that even though these ex-employees were retained in their consultant capacities, they were not subsequently called upon to give advice or perform any further services to the corporation. The witness admitted that there was some motive of generosity in awarding such termination settlements to key executives, but stated that the primary, if not controlling, purpose for such settlements was to further the corporate image as being "a nice place to work." The settlement was characterized as a "continuation of salary" and the purpose of the termination policy was to attract qualified executives who understood that if they were eventually terminated, such would not be precipitous. Furthermore, Mr. Arden testified that the corporation had no policy whatsoever in making gifts to employees, since the only gift procedure with which he was familiar was that involving grants to charitable organizations through an established trust fund.

Plaintiff, on the other hand, places much weight on the fact that he performed no services to the corporation after termination and that after such event, the corporation owed him no further compensation than that which had already been paid by it as salary. Plaintiff testified that in a conversation with Mr. Arden after plaintiff had received his notice of termination, he was told that "this is the largest gift an employee has ever received upon leaving the company." To support his position, plaintiff would show that while the severance pay of other terminated executives lasted only for a period not to exceed one year, the payment to him was to extend for two years or until he found substitute employment. Mr. Arden denies making the alleged statement and pointed out that plaintiff's payment was merely the result of the Executive Committee's decision after considering all the facts and circumstances of plaintiff's case.

The amounts received pursuant to termination were reported as income and taxes were paid thereon. Plaintiff testified that he desired these to be treated as income at first because of the requirements of his insurance company regarding conversion of his policies. At that time, taxpayer was represented by the nationwide accounting firm of Ernst and Ernst. Later, he employed another accounting firm, represented by Mr. Blair, who testified during the trial. It was upon the latter's advice that the gift claim arose.

In the opinion of the Court, and the Court finds as a fact, that the evidence greatly preponderates in favor of the Government's contention that the amounts paid by Robertshaw to the taxpayer were not gifts. Rather, the payments were made for the dominant reason of promoting the business interests of Robertshaw in creating an impression that the corporation was a good one for which to work. At the very least, these payments were made in lieu of income the taxpayer would receive until he found substitute employment, and while there may have been some subtle donative intent on the part of the Executive Committee, this intent was greatly outweighed by the business motive of Robertshaw. (Commissioner v. Duberstein,

363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960)).

The issue of whether the deductions claimed by the taxpayer were proper, presents to this Court a problem that is not easily susceptible to resolution.

Title 26 U.S.C. § 162 allows a deduction for

". . . All the ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business, including—

"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

"(2) traveling expenses (including the entire amount expended for meals and lodging . . .) while away from home in pursuit of a trade or business; . . ."

If the claimed deduction falls outside the purview of § 162, it could be taken only if it then fell within Title 26 U.S.C. § 212, which provides, in pertinent part, that:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred . . ."

"(1) for the production or collection of income; . . ."

The thrust of the Government's argument is that the expenditures made by plaintiff were not those incurred as an ordinary and necessary concomitant of his trade or business so as to fall within the purview of § 162, and must therefore come within § 212 to be deductible. Further, the Government contends that under § 212 and the regulations pursuant thereto as found in 26 C.F.R. 1.212–1(f), these expenses are not deductible since they were not incurred "for the production or collection of income" but were incurred in the mere "seeking" of employment.

To support its position, the Government relies upon Morris v. Commissioner, 423 F.2d 611 (9th Cir. 1970). The facts in *Morris* are similar, if not identical to those under consideration.

There the plaintiff was about to terminate his employment as a corporate executive and like the plaintiff in this case incurred certain expenses pursuant to a contract entered into with Frederick Chusid & Company. The taxpayer did not in fact find employment through the efforts of Chusid. Plaintiffs originally based their claim for refund on both § 162 and § 212, but the case was submitted for argument and was decided solely under § 212.

The Court referred to the regulations as set forth in 26 C.F.R. § 1.212–1(f) and held that for the purposes of deducting expenses under § 212, a deduction was improper where the expense was incurred while "seeking" and preparing for employment rather than incurred while performing income generating duties.

This interpretation appears consistent with the weight of authority interpreting deductions taken pursuant to § 212, and it is upon this case that the Government would include plaintiff's expenses incurred for services rendered by Chusid in the case under consideration.

However, it is important to note that the Court in *Morris* refers to Primuth v. Commissioner, 54 T.C. 374 (1970), a case which was decided after the decision by the *Morris* court had been submitted. (See 423 F.2d 611, 612, footnote 1). It is upon *Primuth*, and a more recent decision by the Tax Court, Cremona v. Commissioner, 58 T.C. 219 (1972) that plaintiff now relies.

In determining whether a deduction taken under similar circumstances as the case before this Court, the Court in *Primuth* considered whether such fell within § 162 or § 212 and held

". . . that the . . . expenditure . . . was incurred by petitioner in *carrying on his trade or business of being a corporate executive*." (Emphasis added) 54 T.C. 376.

In reaching its conclusion, the Court relied upon the case of Mitchell v. United States, 408 F.2d 435, 187 Ct.Cl. 342

(1969), which recognized that an individual corporate executive may in fact be carrying on a trade or business of being such. That case held that a corporate officer may deduct legal fees incurred in defending a shareholders suit against him in his executive capacity. The Tax Court continued:

"The mere fact that petitioner was employed at the time the fee was paid, . . . is of no consequence.

\* \* \* \* \* \*

"The obvious principle . . . is that it is possible for an employee to retain, at least temporarily, his status of carrying on his own trade or business independent of receiving any compensation from a particular employee." 54 T.C. at 378 (See also, Furner v. Commissioner, 393 F.2d 292 (7th Cir. 1968) which recognizes that a teacher may be in the trade or business of teaching).

Because the Court found the taxpayer to have incurred the expense in his trade or business, it did not have to decide whether the deduction could obtain under § 212, and thus avoided the issue altogether.

The rationale of *Primuth* has more recently been affirmed by the Tax Court in *Cremona,* supra, which opinion rejected the position taken in *Primuth* that a deduction would not obtain where the services of the employment agency did not in fact lead to actual employment of the taxpayer. According to the Tax Court, expenses incurred by a corporate executive in seeking substitute employment are deductible under § 162 whether or not the agency employed actually found a job for the executive.

It appears to this Court that the decisions by the Tax Court in *Primuth* and *Cremona* present a new concept in tax litigation that has not heretofore been recognized. During the course of the trial of this case, the Court was informed by counsel that while the Government had appealed the decision of the Tax Court in *Cremona,* such appeal was dismissed.

The crucial question for this Court to decide is whether Mr. Miller was, at the time he incurred expenses relating to his job seeking activities, in the trade or business of being a corporate executive. If so, then he is entitled to a deduction for such expenses under § 162. If not, then plaintiff could not properly deduct the expenses incurred while merely seeking employment.

It is the opinion of the Court that the rationale of the Ninth Circuit in *Morris,* and the cases cited therein, controls the case under consideration notwithstanding the decisions of the Tax Court cited heretofore in this opinion. We cannot say with certainty that the Circuit Court's reference to *Primuth* in a footnote to its opinion indicates that the Court would have decided the case differently had *Primuth* been rendered prior to the submission of the case then under consideration. The Court in *Morris* relies upon the cases of McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68 (1944); Maness v. United States, 367 F.2d 357 (5th Cir. 1966), and Campbell v. Davenport, 362 F.2d 624 (5th Cir. 1964), which stand for the proposition that expenses incurred by a state judge while seeking re-election to the post are not deductible under § 162 as ordinary and necessary expenses incurred in one's trade or business.

In *McDonald,* Mr. Justice Frankfurter aptly stated:

" . . . his (the judge's) campaign contributions were not expenses incurred in being a judge but in trying to be a judge for the next ten years.

\* \* \* \* \* \*

"It suffices to say that petitioner's money was not spent to buy the election but to buy the opportunity to persuade the electors. [Ali's] campaign contribution was not an insurance of victory frustrated by 'an act of God' but the price paid for an active share in the hazards of popular elections." 323 U.S. at 60, 61, 65 S.Ct. at 97.

The Court is aware of the development in recent years toward the rationale advanced by plaintiff. See Furner v. Commissioner, 393 F.2d 292 (7th Cir. 1968), which held that a school teacher was carrying on her trade or business even while temporarily out of work while she was attending school for refresher courses. Nevertheless, it is our opinion that the rationale as stated in *McDonald* still applies to the case under consideration.

Plaintiff's situation is distinguishable from the taxpayers' position in *Furner*, *Primuth* and *Cremona*. In *Furner*, the teacher was seeking to deduct expenses incurred while improving her educational resources, so that in the future she could perform more efficiently in her field. In *Primuth* and *Cremona*, the taxpayer, corporate executive, incurred the expenses to improve his position as a corporate employee. At no time had he terminated employment, either voluntarily or involuntarily, prior to seeking the aid of a professional agent.

In the case under consideration, plaintiff had been terminated and, in effect, was unemployed.[2] He was merely seeking employment when he incurred the expenses sought as deductions. In no way does the proof indicate that he was seeking to improve his expertise in his field. Rather, the proof shows that plaintiff had reached the top of his field before he was terminated.

It is difficult for this Court to perceive how one can be considered performing his trade or business when he is out of a job. Conceptually, it is rec-ognized that one does not lose his expertise in his chosen field of work by the mere fact of becoming unemployed. But it stretches the imagination to say that one is carrying on his trade or business as a corporate executive when he has no corporation for which to be an executive. It would further appear inconsistent to hold that expenses incurred while plaintiff was seeking employment are deductible expenses incurred while one is actively participating in his trade or business.

Thus, the Court feels constrained to follow the rationale of the *McDonald* and *Morris* cases, believing that the decisions of the Tax Court in *Primuth* and *Cremona* do not control the case under consideration.

■ Accordingly, it is the opinion of the Court that plaintiff is not entitled to a refund of any of the amounts claimed here. As to the monies received from Robertshaw Controls in 1967 and 1968, the Court holds that these amounts were not gifts but were taxable income.

■ Additionally, we hold that the deductions claimed by plaintiff for expenses incurred while seeking employment do not fall within either § 162 or § 212. Even if these expenses fall within the purview of § 212, it is the opinion of the Court that under the regulations applicable to that section, plaintiff could not properly deduct such expenses since they were incurred while plaintiff was merely "seeking" employment.

Plaintiff's claims for refund must be denied.

2. The fact that this Court treats plaintiff as unemployed has no effect upon its determination that the monies received from Robertshaw Controls were taxable income and not a gift since those sums were in lieu of income, and were, in effect, severance payments.