EDWARD A. RUESTOW and MARGARET E. RUESTOW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ruestow v. Commissioner
Docket No. 8991-75.
United States Tax Court
T.C. Memo 1978-147; 1978 Tax Ct. Memo LEXIS 367; 37 T.C.M. (CCH) 639; T.C.M. (RIA) 780147; April 17, 1978, Filed Edward A. Ruestow, pro se. Jack H. Klinghoffer, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' Federal income taxes for the taxable year 1973 in the amount of $9,842. The sole issue for our decision is whether $28,000, of a $30,000 payment, which petitioner Edward A. Ruestow received upon termination of his association with a law firm, is excludable from his gross income as a gift. FINDINGS OF FACT Petitioners Edward A. and Margaret E. Ruestow resided in Old Westbury, New York, at the time the petition was filed herein. Petitioners filed a joint Federal income tax return for the year 1973. Petitioner Edward A. Ruestow (hereinafter petitioner) had been employed by the patent law firm of Kenyon & Kenyon for approximately *368 seven years prior to resigning from that firm in 1954. In 1966, petitioner became associated with Kenyon & Kenyon Reilly Carr & Chapin (Kenyon), which was a successor to the Kenyon & Kenyon firm. Petitioner and Kenyon entered into an associate's agreement effective September 1967, which read in part as follows: 8. Termination. Either party may terminate this Agreement, effective at the end of any Quarter Year, on giving thirty (30) days' prior written notice to the other. In case of termination otherwise than by death of ASSOCIATE, the Firm will within thirty (30) days after such termination pay to ASSOCIATE or his order the sum of (a) the surplus if any (after deduction of prior deficits applicable thereto) arising in the final Quarter Year immediately prior to termination and (b) the sum of Two Thousand Dollars ($2,000.00). * * * the payment of the aforementioned fixed sum is to be deemed and will be accepted in lieu of any and all further share interest or percentage of ASSOCIATE, his personal representative or beneficiary, in receipts of the FIRM received after the date of termination, * * * and the payments which the FIRM obligates itself to make as in this Paragraph 8 *369 provided shall constitute the FIRM'S sole remaining obligation to ASSOCIATE, his personal representative or beneficiary. * * * Under this provision, petitioner was entitled to only $2,000 when he left Kenyon in 1973. Petitioner brought clients to Kenyon while associated with it, but he did not take any clients with him when he left except that he handled some matters for one small client who requested him to do so. In 1973, petitioner was the most senior associate of Kenyon except for one career associate. Kenneth Madsen (Madsen), a partner in Kenyon, has been with such firm since 1960. Madsen's duties with Kenyon included assisting the administration of associates. At a meeting in early 1973, which was attended by petitioner, Madsen, and two other partners, petitioner was advised that his employment with Kenyon was being terminated and that Kenyon was paying him $30,000 in connection with such termination. At petitioner's request, the $30,000 was paid to him during 1973 in three $10,000 installments. Kenyon treated the $30,000 payment as "Severance Pay" on its records and such amount was deducted by it as an ordinary and necessary business expense. Kenyon did not have *370 a policy of making gifts to its employees. In determining the amount of the $30,000 payment, Kenyon considered petitioner's length of service with the firm and petitioner's age, which was approximately 61 in 1973. Kenyon was inclined to give petitioner a substantial sum because of the concern that on account of his age it would take petitioner longer than average to find a new job. Kenyon also was concerned about maintaining a good relationship with petitioner. Kenyon has made payments to other employees upon their leaving its employment. Kenyon has arranged to pay $50,000 to its career associate who was senior to petitioner when that associate leaves the firm. Kenyon instituted a pension plan approximately two years prior to the termination of petitioner's employment. Kenyon did not take into account petitioner's rights under such pension plan when deciding on the amount of the $30,000 payment to petitioner. Petitioner received $4,007.04 from such pension plan. Petitioner reported only $2,000 of the $30,000 payment on his 1973 return. In his statutory notice, respondent determined that the remaining $28,000 of the $30,000 payment was taxable income to petitioner in *371 1973. OPINION Petitioner contends that only $2,000 of the $30,000 payment is includable in his income because under the associate's agreement he was entitled to only $2,000 upon its termination so that the remaining $28,000 was a nontaxable gift. Respondent argues that the entire $30,000 is taxable because petitioner has not met his burden of proving that any part of it was a nontaxable gift. Whether a transfer is a gift or a payment of income to the recipient is a factual determination. Commissioner v. Duberstein,363 U.S. 278 (1960). Moreover, petitioner bears the burden of proving that respondent's characterization of the payment as income is incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure.
In Duberstein, the Supreme Court stated (363 U.S. at 285): For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, it is not a gift. And, conversely, "[where] the payment *372 is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," "out of affection, respect, admiration, charity or like impulses." And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." * * * [Citations and footnote omitted.] The donor's characterization of his action is not determinative, Commissioner v. Duberstein,supra, but in the instant case Kenyon's characterization of the $30,000 payment as income in the form of severance pay is amply supported by objective facts. Kenyon did not have a policy of making gifts to its employees. In determining the amount of such payment Kenyon considered petitioner's length of service and his age which the firm felt would have a direct and unfavorable bearing on the length of time that it would take petitioner to secure new employment. Both of these factors are relevant to determine the proper amount of severance pay and consideration of them by Kenyon indicates that the $30,000 payment was *373 compensation, although made voluntarily without legal obligation. Frank v. United States,260 F. Supp. 691, 696 (S.D. N.Y. 1966). Kenyon has made arrangements to make a similar, but larger, payment to an associate who will have more years of service when he leaves than petitioner had when he left Kenyon. We believe the $30,000 payment was made to petitioner as severance pay and that Kenyon anticipated a benefit of an economic nature by retaining the goodwill of petitioner and creating the impression that Kenyon was a good firm for which to work. Miller v. United States,362 F. Supp. 1242, 1245 (E.D. Tenn. 1973). Accordingly, we hold that the $30,000 payment to petitioner was not a gift so that it is includable in petitioner's income under section 61. [1]
Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩