T.C. Summary Opinion 2004-126


UNITED STATES TAX COURT


MARK W. AND ANITA P. FRANKLIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7161-03S.                    Filed September 9, 2004.


Mark W. and Anita P. Franklin, pro sese.

<u>Margaret Rigg</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax of $2,242, and an addition to tax of $488.25 under section 6651(a)(1), for the taxable year 1998.

The issues for decision are: (1) Whether petitioners are entitled to certain miscellaneous itemized deductions in the amount of $14,971.38 for "job seeking expenses"; and (2) whether petitioners are liable for an addition to tax under section 6651(a)(1) for failing to file timely their Federal income tax return.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits thereto are incorporated herein by this reference. Petitioners resided in San Francisco, California, on the date the petition was filed in this case.

During 1998, Mark W. Franklin (petitioner) was employed as a production specialist[1] for United Airlines. His employment location was the United Airlines facility at the San Francisco International Airport.

Between January and the end of March 1998, Anita P. Franklin (petitioner wife) was unemployed and had been unemployed for the previous 4 years. At the end of March, she began working for the County of Alameda in Oakland, California, in an administrative

---

[1]Petitioner also described his job as a "computer terminal technician position".

capacity.  She remained in this position for the remainder of 1998 and was still working there at the time of trial.

Petitioners testified that in January they decided that petitioner would look for a new job[2] with United Airlines or another company in a different city where petitioner wife might also find administrative work.  However, petitioners never set up any appointments or arranged any interviews in these destination cities.  Petitioners also were unclear about what job positions or vocations they were seeking.

From January 4 to 8, 1998, petitioners traveled from San Francisco, California, to Miami, Florida, in search of employment for both of them.  Petitioner was seeking employment with his current employer or another airline company in Miami, while petitioner wife conducted a "cold canvas search" with various employers in Miami, Palm Springs, Plantation, Port Everglades, Fort Lauderdale, Davie, Dania, Hollywood, and Hallandale, Florida.  The total expense of this employment search was allegedly $2,937.  Of this amount petitioners calculated $509 for hotel expenses; $356 for meal expenses; $210 for car rental expenses; $70 for gas expenses; $1,772 for air fare expenses; and $20 for parking expenses.

---

[2]Petitioner's testimony is unclear as to what type of job position he was seeking.

The second trip occurred from January 18 to 22, 1998, when petitioners traveled from San Francisco, California, to Los Angeles, California, again in search of employment for both of them. Petitioner was seeking employment with his current employer or another airline company in Los Angeles, while petitioner wife conducted a "cold canvas search" with various employers in Los Angeles, Long Beach, Santa Ana, Pasadena, Anaheim, Riverside, Irvine, and Burbank, California. The total expense of this employment search was allegedly $1,592. Of this amount petitioners calculated $515 for hotel expenses; $287 for meal expenses; $234 for car rental expenses; $100 for gas expenses; $430 for air fare expenses; and $56 for parking expenses.

The third trip occurred from February 1 to 5, 1998, when petitioners traveled from San Francisco, California, to Washington, D.C., in search of employment for both of them. Petitioner was seeking employment with his current employer or another airline company in Washington, D.C., while petitioner wife conducted a "cold canvas search" with various employers in Washington, D.C.; Fairfax, Vienna, Reston, Arlington, and McLean, Virginia; and Silver Spring, Oxon Hill, Adelphi, and Bethesda, Maryland. The total expense of this employment search was allegedly $2,927. Of this amount petitioners calculated $569 for hotel expenses; $418 for meal expenses; $253 for car rental

expenses; $85 for gas expenses; $1,572 for air fare expenses; and $30 for parking expenses.

The fourth trip occurred from February 22 to 26, 1998, when petitioners traveled from San Francisco, California, to Chicago, Illinois, in search of employment for both of them. Petitioner was seeking employment with his current employer or another airline company in Chicago, Illinois, while petitioner wife conducted a "cold canvas search" with various employers in Chicago, Oak Park, Oak Brook, Englewood, Norridge, and Oak Lawn, Illinois. The total expense of this employment search was allegedly $2,879. Of this amount petitioners calculated $639 for hotel expenses; $448 for meal expenses; $336 for car rental expenses; $120 for gas expenses; $1,298 for air fare expenses; and $38 for parking expenses.

Petitioners also contend that on January 2, 12-16, 23-26, February 9-20, and March 2-13, 1998, petitioner wife conducted a "cold canvas search" with various employers in San Francisco, Walnut Creek, San Jose, Marin, San Rafael, Oakland, Sacramento, Berkeley, San Mateo, Sunnyvale, Concord, and Hayward, California. The total expense of this employment search was allegedly $738. Of this amount, petitioners calculated $425 for gas expenses, $52 for toll expenses, $95 for parking expenses, $15 for newspaper expenses, $30 for copying expenses, $32 for paper supplies, $64 for postage, and $25 for envelopes.

Petitioners claimed that all receipts and documents which substantiated the aforesaid job seeking expenses were destroyed by water damage that occurred in their San Francisco home.

Petitioners filed a joint Federal income tax return for the taxable year 1998, which included a Schedule A, Itemized Deductions. Petitioners' Schedule A listed miscellaneous itemized deductions, which included "job seeking expenses" in the amount of $14,971.38.

Petitioners testified that they mailed their 1998 Federal income tax return to the Internal Revenue Service (IRS) office in Fresno, California, in October of 1999, after the expiration of an extension date. However, respondent contends that petitioners mailed their return on or about April 4, 2000, and said return was received by the IRS on April 6, 2000.

In the notice of deficiency for the taxable year 1998, respondent determined that petitioners: (1) Are not entitled to deduct the $14,971.38 claimed as "job seeking expenses"; and (2) are liable for an addition to tax of $488.25 pursuant to section 6651(a)(1) for failure to file their 1998 tax return by the prescribed due date.

Miscellaneous Itemized Deduction--Job Seeking Expenses

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business. To be "ordinary" the

transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved. <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. <u>Welch v. Helvering</u>, 290 U.S. 111, 113-114 (1933). The performance of services as an employee constitutes a trade or business. See sec. 1.162-17(a), Income Tax Regs. The employee must show the relationship between the expenditures and the employment. See <u>Evans v. Commissioner</u>, T.C. Memo. 1974-267.

Such deductible expenses include those incurred in searching for new employment in the employee's same trade or business. <u>Cremona v. Commissioner</u>, 58 T.C. 219 (1972); <u>Primuth v. Commissioner</u>, 54 T.C. 374 (1970). It does not matter whether the search is successful, or even whether the taxpayer accepts a new position when it is obtained. See <u>Cremona v. Commissioner</u>, <u>supra</u> at 221-222; <u>Kenfield v. Commissioner</u>, 54 T.C. 1197, 1199-1200 (1970). It does not matter that the taxpayer is temporarily unemployed while searching, or that the taxpayer is temporarily engaged in a different trade or business while searching for a new position in the trade or business previously conducted by the taxpayer. See <u>Primuth v. Commissioner</u>, <u>supra</u> at 378; <u>Charlton v. Commissioner</u>, T.C. Memo. 1988-515. Job search expenses include resumé preparation expenses, postage, and travel and

transportation expenses. See <u>Murata v. Commissioner</u>, T.C. Memo. 1996-321.

If the employee is seeking a job in a new trade or business, however, the expenses are not deductible under section 162(a). <u>Dean v. Commissioner</u>, 56 T.C. 895 (1971); <u>Frank v. Commissioner</u>, 20 T.C. 511, 513 (1953); <u>Hobdy v. Commissioner</u>, T.C. Memo. 1985-414; <u>Evans v. Commissioner</u>, T.C. Memo. 1981-413; see <u>Carter v. Commissioner</u>, 51 T.C. 932, 934 (1969); sec. 1.212-1(f), Income Tax Regs. A taxpayer who has been unemployed for more than a reasonably temporary period is not in the trade or business of being employed, and thus the expenses of searching for a job are not deductible. <u>Miller v. United States</u>, 362 F. Supp. 1242, 1247-1248 (E.D. Tenn. 1973).

Due to the fact that petitioner wife was unemployed during the period of time in 1998 in which petitioners conducted their "job search" and had been unemployed for the 4 years prior to 1998, she is considered not in the trade or business of being employed, and thus her expenses of searching for a job in the San Francisco area and on the four job search trips are not deductible. <u>Id.</u>

The record is unclear as to the type of employment petitioner was seeking in 1998. The Court is not certain as to whether petitioner was looking for the same position elsewhere or another type of job. Nevertheless, we give petitioner the

benefit of the doubt and assume that he was seeking the same job at another location.

Petitioners claimed a $14,971.38 deduction for traveling expenses that they claim they incurred in seeking employment. Of this amount, petitioners argue that $2,937 is attributable to their Miami, Florida, job search; $1,592 is attributable to their Los Angeles, California, job search; $2,927 is attributable to their Washington, D.C., job search; $2,879 is attributable to their Chicago, Illinois, job search; and $738 is attributable to their local job search.

As a general rule, the determinations of the Commissioner in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving the Commissioner's determinations in the notice of deficiency to be in error. Rule 142(a); Welch v. Helvering, supra at 115. Section 7491(a), which shifts the burden of proof to the Commissioner under certain circumstances, does not apply with respect to this factual circumstance because petitioners neither alleged that section 7491 was applicable nor established that they fully complied with the statutory substantiation requirements of section 7491, as shown below. Sec. 7491(a)(2)(A) and (B).

Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. Rule 142(a); New Colonial Ice

Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 6001 and the regulations promulgated thereunder require taxpayers to maintain records sufficient to permit verification of income and expenses. As a general rule, if the trial record provides sufficient evidence that the taxpayers have incurred a deductible expense, but the taxpayer is unable to adequately substantiate the precise amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of the deductible expense bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making and allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, the Court must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957).

In the case of travel expenses, specifically including meals and entertainment, as well as certain other expenses, section 274(d) overrides the so-called Cohan doctrine. Sanford v.

<u>Commissioner</u>, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

Nearly all of the claimed job search expenses are travel expenses subject to the strict substantiation requirements imposed by section 274(d). Under section 274(d), no deduction may be allowed for expenses incurred for travel, or certain other expenses, on the basis of any approximation or the unsupported testimony of the taxpayer. Section 274(d) imposes strict substantiation requirements to which taxpayers must strictly adhere. Thus, section 274(d) specifically proscribes deductions for travel expenses in the absence of adequate records, or of sufficient evidence corroborating the taxpayer's own statement. At a minimum, the taxpayer must substantiate: (1) The amount of such expense; (2) the time and place such expense was incurred; and (3) the business purpose for which such expense was incurred.

Petitioners claim that they kept adequate records and receipts to substantiate their claimed expenses, but that such records and receipts were allegedly destroyed by water damage. Petitioners offered and the Court received into evidence an expense log. Petitioners' expense log was based on their recollection of the expenses and travel dates, but no receipts or documents were used in its preparation. The total expense claimed in the log was $11,073. We do not accept this log as reliable evidence because it was prepared approximately 2 months

before trial, about 6 years after the year in issue, and it was prepared in contemplation of litigation.  Also, petitioners' testimony supporting such expenses is vague and unclear.  Under the circumstances this log cannot be given any weight by this Court.

Furthermore, petitioners have failed to account for the discrepancy between their total expenses in their expense log ($11,073) and their Schedule A claimed "job seeking expenses" ($14,971.38).  Although most of the expenses were charged to personal credit cards, petitioners have not provided any contemporaneous records or documents to show that they paid such expenses in the amounts set forth.  For example, petitioners have not shown that they requested copies of airfare ticket vouchers, hotel bills, car rental agreements, or credit card statements to substantiate their claimed deductions.  Petitioners admitted that the amounts for "job seeking" expenses on the Schedule A are estimates, and that they cannot provide the supporting documents that were used to arrive at the amounts of the expenses shown thereon.

Petitioners have failed to satisfy the requirements of section 274(d) with respect to any traveling expense that they might have incurred in seeking employment.  Therefore, we conclude that petitioners have failed to substantiate the disallowed claimed deduction.  See sec. 6001; sec. 1.6001-1(a),

(e), Income Tax Regs.  Respondent's disallowance of the deduction is sustained.

Failure To File, Addition To Tax

Respondent determined an addition to tax as a result of petitioners' failure to timely file their Federal income tax return for the year in issue.  Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing).  The amount of the addition is equal to 5 percent of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25 percent for returns more than 4 months delinquent.  Sec. 6651(a)(1).

Petitioners' 1998 Federal income tax return was due on April 15, 1999.  See sec. 6072(a); sec. 1.6072-1(a), Income Tax Regs. Section 6081(a) allows for a reasonable extension for the filing of a tax return; the extension may not exceed 6 months.  See sec. 6081.  Petitioners requested an extension to August 15, 1999, to file their 1998 return.  Petitioners obtained such extension for filing their return.  However, petitioners testified that their 1998 return was filed in October of 1999, while respondent contends that petitioners' 1998 return was received by respondent on April 6, 2000.

Respondent has the burden of production with respect to any penalty, addition to tax or an additional amount imposed, and petitioners bear the burden of proving the addition to tax does not apply. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-47 (2001).

Respondent contends that petitioners mailed their return on or about April 4, 2000, and said return was received by the IRS on April 6, 2000. Respondent offers as evidence to carry his burden of production, a copy of the original 1040 form filed by petitioners, which has stamped on its second page an IRS date receipt stamp. Such an IRS date stamp, which has been applied in the ordinary course of business, has been held to be sufficient evidence to establish receipt of a return. See Schentur v. United States, 4 F.3d 994 (6th Cir. 1993).

Respondent also offers as evidence, and the Court has received into evidence, a copy of the envelope which respondent claims contained petitioners' 1998 return. Said envelope is addressed to the IRS office in Fresno, California; it is postmarked with the date of April 4, 2000; and it bears the petitioners' return address. It is also pertinent to note that the envelope was mailed from Oakland, California. This Court finds it to be more then coincidental that the envelope containing the purported return bore the date of April 4, 2000, and the IRS stamp date was April 6, 2000--this appears to be the

ordinary Postal Service time for delivery of mail from Oakland, California, to Fresno, California.

Petitioners admit they did not file their return by the proper filing date as extended but claim they mailed their return no later then October. Petitioners have failed to offer any evidence to contradict respondent's above evidence, except unsubstantiated trial testimony.[3]

This Court finds petitioners' testimony vague, unclear, and unpersuasive. We reject petitioners' testimony that their 1998 return was filed in October of 1999 and that the copy of the envelope offered into evidence is not the proper envelope which contained petitioners' 1998 return.

Petitioners' only dispute with the application of section 6651(a)(1) is with the date they filed their return. Petitioners failed to file timely their Federal income tax return for 1998. Petitioners have not argued, and there is nothing in the record to indicate, that such failure was due to reasonable cause and not to willful neglect. Respondent's determination that petitioners filed their return in April of 2000, and therefore

---

[3]Sec. 7502 describes two examples of evidence that could have been used by petitioners. First, if any return is required to be filed by a certain date, and is received after that date, the date of the U.S. postmark shall be deemed the date of delivery. Second, if a document is sent by registered or certified mail, such registration or certification shall be prima facie evidence that the document was delivered on the date of the postmark. See sec. 7502.

petitioners are liable for the addition to tax under 6651(a), is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for respondent</u>.